ALLSTATE INSURANCE COMPANY, an Illinois corporation, Plaintiff,

v.

The EMPLOYERS' LIABILITY ASSUR-ANCE CORP., Ltd. and United States Fidelity and Guaranty Company, Defendants.

No. 68–1145–Civ.

United States District Court,
S. D. Florida.

July 21, 1970.

Dean, Adams, George & Wood, Miami, Fla., for plaintiff.

Blackwell, Walker & Gray, Miami, Fla., for Employers' Liability Assur. Corp., Ltd.

Carey, Dwyer, Austin, Cole & Selwood, Miami, Fla., for U. S. Fidelity & Guaranty Co.

## MEMORANDUM OPINION

FULTON, Chief Judge.

This is a dispute over insurance coverage. The parties seek a declaratory judgment pursuant to Title 28 U.S.C. § 2201, concerning interpretation of the relevant provisions of four separate liability insurance policies. The Court has jurisdiction over the cause under Title 28 U.S.C. § 1332, diversity of citizenship. The plaintiff, Allstate Insurance Company, is an Illinois corporation, with its principal place of business in Chicago, Illinois. The defendant, The Employers' Liability Assurance Corp. Ltd., is an English corporation, with its principal place of business in Boston, Massachusetts; and the defendant, United States Fidelity and Guaranty Company, is a Maryland corporation with its principal place of business in Baltimore, Maryland.

This terribly complicated legal dispute arose out of the simplest sort of factual situation. On April 8, 1967, Neal Allen Roth, a minor, was injured in an automobile accident in Dade County, Florida. Roth and his father sued Harold Hefter, the driver of the car which caused the accident, Equitable Millinery Company, Inc., lessee of the automobile, and Merit Rentals, Inc., the owner-lessor of the automobile. That action was filed in the Circuit Court of Dade County, Florida, and resulted in a settlement in favor of the Roths for $250,000.

Lumberman's Mutual Casualty Company, not a party to this lawsuit, had in effect an insurance policy for Merit Rentals, Inc. Lumberman's acknowledged that its policy afforded coverage to all named defendants in the suit in the State Court, and therefore actively defended that suit and paid its policy limits of $100,000 in partial satisfaction of the resultant settlement.

In addition to Lumberman's, the three insurance companies above named have possible liability in this case. Defendant Employers' had a policy wherein Merit Rentals was the named insured, affording coverage of $1,000,000 for each occurrence, excess over the underlying limits of $100,000 per person provided by the Lumberman's policy. Under the Employers' policy, all additional insureds under the Lumberman's policy were additional insureds under the Employers' policy. Harold Hefter thereby acquired coverage under the Employers' policy.

Plaintiff, Allstate, had in effect a policy wherein Harold Hefter was the named insured. This policy afforded $100,000 bodily injury liability coverage for accidents arising out of the use of non-owned automobiles. Defendant, U. S. F. & G., had a policy in which Harold Hefter and others, doing business as Equitable Millinery Co., were named insureds, which policy provided $100,000 bodily injury liability coverage per person, and included a hired automobiles endorsement.

The three parties to this suit, Allstate, Employers' and U. S. F. & G., each contributed $50,000, making a joint contribution of $150,000, which combined with the $100,000 supplied by Lumberman's, enabled all parties to discharge any liability they may have had to the Roths, by a total payment of $250,000. This contribution by the companies was made upon the mutual agreement that it was without prejudice to their rights to seek a judicial determination of their rights and obligations under their respective policies, and to thereby adjust their liabilities. The insurance companies are to be commended for their prompt action in settling the Roth claim so that the injured parties were made as whole as possible without having to wait for resolution of the legal technicalities of the coverage dispute between the companies.

In this lawsuit, Allstate, Employers' and U. S. F. & G. seek a declaration of their liabilities under their respective policies. Allstate filed the complaint. Employers' counterclaimed against Allstate, and crossclaimed against U. S. F. & G., which in turn crossclaimed against Employers'. Although Allstate brought the complaint, as the case has developed Allstate and U. S. F. & G. agree with each other on virtually all issues and

jointly seek to have all, or substantially all, of the $150,000 liability imposed on Employers', whose policy has limits of $1,000,000, ten times the limits of the policies of Allstate and U. S. F. & G.

This cause progressed through the pre-trial conference stage. All parties then moved for summary judgment. It has been made abundantly clear that there is no genuine issue of any material fact remaining. The cause has been submitted to the Court upon the pleadings, motions for summary judgment, and extensive briefs and memoranda. The parties have stipulated that each of the insurance contracts involved in the case is an Illinois contract, issued to insureds who are citizens of Illinois, and that Illinois law controls.

The four insurance policies have been made a part of the record. They are, however, too long to be included in this memorandum opinion. The Court has attached to this opinion an appendix which quotes verbatim a portion of the pretrial stipulation signed by counsel for all parties, containing the relevant documentary evidence in this cause.

This has been a difficult case. It is an anomaly that so vital a segment of the American economy as the insurance industry tolerates language so abstruse that even the high powered lawyers who drafted the policies cannot explain what they mean. The Court feels a kindred spirit with the Kentucky jurist who penned this gem:

> Ambiguity and incomprehensibility seem to be the favorite tools of the insurance trade in drafting policies. Most are a virtually impenetrable thicket of incomprehensible verbosity. It seems that insurers generally are attempting to convince the customer when selling the policy that everything is covered and convince the court when a claim is made that nothing is covered. The miracle of it all is that the English language can be subjected to such abuse and still remain an instrument of communication. But, until such time as courts generally weary of the task we have just experienced and strike down the entire practice, we feel that we must run with the pack and attempt to construe that which may well be impossible of construction. Osborne, J., Ky.Ct.App., in Universal Underwriters Ins. Co. v. Travelers Ins. Co., Ky., 451 S.W.2d 616 (1970).

As the pleadings and briefs have developed, there are several alternative theories. Allstate and U. S. F. & G. contend that Employers' is liable for the entire $150,000 in dispute, because the Employers' policy provides for coverage in this situation if there is no other valid and collectible insurance. Allstate and U. S. F. & G. contend their coverage in this situation is excess and therefore not other valid and collectible insurance under the law, so that Employers' is liable for all. Alternatively, Allstate and U. S. F. & G. argue that the three companies are liable *pro rata* on the basis of their respective policy limits. Employers' counters with the contention that Allstate and U. S. F. & G. are liable for the entire $150,000 because its policy affords exclusively excess coverage and does not come into play until all other sources of coverage have been exhausted. Alternatively, Employers' seeks an equal allocation of the loss among the three companies, so that each will remain in the same position as they are presently.

Each side has filed exhaustive briefs, attempting to substantiate their varying positions with lengthy lists of case citations. None of the cases cited to the Court afford a ready solution to this case, since they are factually distinct from the case at bar. For example, most of the cited cases dealing with excess clauses involve distribution of a loss between two insurance carriers, carriers for the owner and driver, rather than three, or actually four, as are involved in this case. Many of the cited cases deal exclusively with policies containing excess insurance clauses, rather than the type of clause contained in Employers' policy in this case, which has been described by some courts as an

escape clause, since it seeks to avoid liability entirely under certain circumstances.

As a general rule, Courts have required proration of loss between liability insurers whose policies contain clauses intended to make the coverage excess over any other available insurance coverage. In a majority of these cases, the proration has been in accordance with the proportionate policy limits. See generally Annot., 69 A.L.R.2d 1122 (1960). Allstate and U. S. F. & G. reject the proration solution, stating that the case at bar does not involve policies with mutual excess clauses, since the Employers' policy seeks to render itself null and void when there is other valid and collectible insurance. Allstate and U. S. F. & G. rely heavily on Employers' Liability Assur. Corp., Ltd. v. Fund Ins. Group, 104 U.S.App.D.C. 350, 262 F.2d 239 (D.C.Cir.1958). In that case, Employers' was the insurer of the owner of a car negligently driven by a person insured by Fireman's Fund Insurance Group, under a policy covering temporary substitute cars, but providing that such coverage was excess over any other valid and collectible insurance. The Employers' policy declared itself null and void if other valid insurance existed. The Court held that the car owner's coverage was primary, and the driver's coverage secondary. Even more specifically, Allstate and U. S. F. & G. point to New Amsterdam Cas. Co. v. Certain Underwriters, 34 Ill.2d 424, 216 N.E.2d 665 (1966), an Illinois Supreme Court case adopting the majority view placing primary liability upon the car owner's insurer when the owner's policy contains an omnibus clause covering unnamed persons driving an insured vehicle, even though such policy contains an escape clause rendering it "void" if the additional insured has other valid and collectible insurance. In that case the driver's insurer, whose policy provided that its coverage was to be excess over any other valid and collectible insurance, was held to be only secondarily liable, if the loss should exceed the amount of primary coverage. Stated differently, Illinois has adopted the majority position that when there is an apparent conflict between an escape clause in one policy and an excess clause in another policy, the excess clause is given effect. Zurich General Accident & Liability Ins. Co. v. Clamor, 124 F.2d 717 (7 Cir. 1941); New Amsterdam Cas. Co. v. Certain Underwriters, *supra*.

What the Illinois cases describe as the "minority view" is the rule that excess insurance clauses are mutually repugnant and cannot be given effect when all policies covering a given loss include such clauses. In such cases, under this rule, the liability of the insurers must be prorated. This view is represented by Gilkey v. Andrew Weir Ins. Co., 291 F.2d 132 (9 Cir. 1961); and Oregon Auto Ins. Co. v. United States Fidelity & Guaranty Co., 195 F.2d 958 (9 Cir. 1952). Actually, this is not so much a matter of a majority and minority view as it is a difference of authority on the question of whether a distinction should be made in those cases where the language of one policy constitutes a so-called escape clause, and another policy has the standard excess provision.

In defense of its position, Employers' has strongly pressed the cases wherein excess clauses have been declared mutually repugnant and unenforceable and proration of liability has been enforced. Unfortunately for Employers', the Illinois Courts have specifically rejected this view in cases in which a vehicle owner's policy includes an escape clause which must be juxtaposed with an excess clause in a driver's policy. It is true that no cases have been cited in which the facts are truly similar to those of this case. For example, in this case at least one "primary" carrier has already been established, by virtue of Lumberman's voluntary acceptance of that status. Therefore, Employers' argues that the present dispute is between carriers whose coverage is all excess rather than primary. Further, Employers' points out that the Allstate and U. S. F. & G. policies both name Hefter as an insured,

while the Employers' policy includes him only as an additional insured under the extended coverage, or omnibus clause. It may be that these are valid factual distinctions. Nevertheless, this Court is bound to apply the law of Illinois as it finds it. This Court declines to speculate whether an Illinois Court would treat this case differently from its well established rule on the interpretation of escape versus excess insurance clauses.

This Court finds the Illinois law on this point to be harsh, but is not in a position to change it. Therefore, the inescapable conclusion in his case is that Employers' is liable for the entire $150,000 excess over the $100,000 paid by Lumberman's. Allstate and U. S. F. & G. are entitled to reimbursement from Employers' for the sums previously expended by them in payment of the Roth settlement.

■ There remains for discussion the counterclaim of Employers' against Allstate and the crossclaim of Employers' against U. S. F. & G. on the theory that Employers' is subrogated to the rights of its insured Merit Rentals, which as owner of the vehicle is, according to Employers', entitled to full indemnification against Hefter, the driver, for any loss sustained in this suit. These claims are based on the Employers' position that Employers' owes no coverage to Hefter under the circumstances of this case, due to the escape clause of its policy. Under the construction this Court has placed upon these insurance contracts, this position cannot be sustained. The Court has held that of the three insurance companies only Employers' had any liability on the Roth claim and that neither Allstate nor U. S. F. & G. owed Hefter coverage in this situation. Therefore, a finding that Employers' is entitled to indemnity from Hefter would adjudicate the individual rights of Harold Hefter, who is not a party to this lawsuit. Inasmuch as Hefter has not been made a party, the Court is without jurisdiction to adjudicate the counterclaim and crossclaim of Employers'. Hence, there will be no indemnity between the carriers in this case. There is pending in the state court an action which will resolve that issue.

■■ Both the complaint of Allstate and the crossclaim of U. S. F. & G. seek to recover attorneys' fees and costs from Employers'. The costs of this action will be assessed against Employers'. However, the allowance of attorneys' fees would render an already harsh decision too severe. Such a result is not required under the law. Under Florida law, attorneys' fees are generally not awarded as damages in the absence of a specific statutory or contractual provision providing for such fees. Florida Statute § 625.08, F.S.A., which provides for an award of attorneys' fees to a plaintiff beneficiary who prevails over an insurer is inapplicable to this lawsuit. Neither the Employers' nor the U. S. F. & G. or Allstate policies provide for the payment of attorneys' fees under the circumstances of this case. The New Amsterdam Cas. Co. v. Certain Underwriters case, *supra*, has been cited to require Employers' to pay attorneys' fees, but the holding in that case with respect to attorneys' fees was based on the fact that the company upon which liability finally came to rest was obligated to defend its insured under its policy and had refused to do so. In this case, Lumbermen's undertook the defense of the State action brought by the Roths, on behalf of each of the three defendants in that case, Merit Rentals, Equitable Millinery and Harold Hefter. Employers' actively participated in the settlement of that claim and has in no way defaulted upon its responsibilities. The parties to this suit are all large insurance companies. This case is of their own making, having arisen out of the lack of precision in their policies. Each party must pay the fees of its own counsel.

This memorandum opinion shall serve as findings of fact and conclusions of law pursuant to Fed.R.Civ.P. 52. Counsel for the plaintiff shall forthwith prepare and submit a form of final judgment in conformity herewith.

## APPENDIX

### A. LUMBERMEN'S POLICY

The comprehensive general liability insurance policy issued by Lumbermen's to Merit, as a named insured, was a policy of primary insurance and by its terms covered Equitable and Hefter. Lumbermen's per person accident liability limits are $100,000.

### B. EMPLOYERS' POLICY

The comprehensive general liability insurance "umbrella" policy issued by Employers to Merit, as named insured, in essence and pertinent part, provides:

"INSURING AGREEMENT I. COVERAGES:

To indemnify the insured for all sums which the insured shall be obligated to pay by reason of the liability imposed upon him by law or liability assumed by him under contract or agreement for damages, and expenses, all as included in the definition of 'ultimate net loss', because of:

(a) personal injuries, as hereinafter defined";

\* \* \* \* \* \*

EMPLOYERS' policy defines the word "Insured" as follows:

"INSURING AGREEMENTS II. DEFINITIONS:

\* \* \* \* \* \*

1. Insured. The unqualified word 'insured' includes the named insured and also includes:

\* \* \* \* \* \*

(b) any other person \* \* \* who is an additional insured under any underlying policy of insurance subject to all the limitations upon coverage under such policy other than the limits of the underlying insurer's liability;

(c) with respect to any automobile owned by the named insured or hired for use by or on behalf of the named insured, \* \* \* any person while using such automobile \* \* \* and any person or organization legally responsible for the use thereof, provided the actual use thereof is with the permission of the named insured.

\* \* \* \* \* \*

EMPLOYERS' policy defines the phrase "ultimate net loss" to mean:

"INSURING AGREEMENTS II. DEFINITIONS:

5. Ultimate Net Loss.

The term "ultimate net loss" shall mean the total sum which the insured, or any company as his insured, or both, becomes legally obligated to pay as damages because of personal injury \* \* \* claim(s), either through adjudication or compromise, and shall also include \* \* all sums paid as \* \* \* \* fees, charges and law costs, \* \* \* and for litigation, settlement, adjustment and investigation of claims and suits which are paid as a consequence of any occurrence covered hereunder, \* \* \* "

The "Conditions" section of EMPLOYERS' policy provides:

"4. Limits of Liability. The company shall only be liable for ultimate net loss in excess of \* \* \*

(a) \* \* \* the applicable limits of liability of the policies of underlying insurance set forth in Item 3 of the Declarations \* \* \* "

\* \* \* \* \* \*

"5. Severability of Interests. The term 'the insured' is used severally and not collectively, but the inclusion herein of more than one insured shall not operate to increase the limits of the company's liability. If more than one insured is named in Item 1 of the Declarations, it is understood and agreed that the limits of the company's liability shall not apply separately to each such insured.

"10. Other Insurance. If any other valid and collectible insurance exists protecting the insured against ulti-

mate net loss covered by this policy (other than the policies of underlying insurance specified in Item 3 of the declarations and other than any policy with respect to which this policy is specified therein as underlying insurance) this policy shall be null and void with respect to such loss whether the insured is specifically named in such other policy of insurance or not; provided however, if the amounts recoverable by the insured under such other insurance are not sufficient to completely protect the insured against such loss, this policy shall apply but only as excess insurance over such other valid and collectible insurance, in an amount not to exceed the limit of the company's liability stated in this policy, and not as contributing insurance."

EMPLOYERS' per person/accident liability limits are $1,000,000.

## C. ALLSTATE'S POLICY

The comprehensive general liability insurance policy issued by ALLSTATE to HEFTER, as named insured, provides, in essence and pertinent part, that ALLSTATE will pay for "an insured" all damages which the insured shall be legally obligated to pay because of "bodily injury sustained by any person" arising out of the use of a "non-owned automobile."

The term "non-owned automobile" is defined as "an automobile * * * not owned by the named insured or any relative, other than a temporary substitute automobile."

With regard to "other insurance" the ALLSTATE policy provides:

"If there is other insurance—

Allstate shall not be liable under this Part I for a greater proportion of any loss than the applicable limit of liability stated on the Supplement Page bears to the total applicable limit of liability of all collectible insurance against such loss; provided, however, the insurance with respect

to a temporary substitute automobile or a non-owned automobile shall be *excess* insurance over any other collectible insurance."

ALLSTATE'S per person/accident liability limits are $100,000.00.

## D. U.S.F. & G'S POLICY

The comprehensive automobile liability insurance policy issued by U.S.F. & G to HEFTER and EQUITABLE, as named insureds, as endorsed to include "hired automobiles" coverages, provides, in essence and pertinent part, that U.S.F. & G. will pay on behalf of "the insured" all sums which the insured shall become legally obligated to pay as damages arising out of the use of "hired Automobiles." The policy defines the words "hired automobile" to mean "a land motor vehicle * * * used under contract in behalf of, or loaned to, the Named Insured * * " The "Hired Automobiles" endorsement to U.S.F. & G.'s policy contains the following pertinent provisions: * *

"2. *Applicable of Insurance.*

(a) The Definition of Insured agreement of the policy applies to the insurance afforded under this endorsement except to the owner or any lessee, other than the Named Insured, of the automobile, or to any agent or employee of such owner or lessee.

\* \* \* \* \* \*

3. Premium. The premium basis for this insurance is cost of hire. The premium stated in the schedule is an estimated premium only. Upon termination of the policy, the earned premium for this insurance shall be computed in accordance with the Company's rules, rates, rating plans, premiums and minimum premiums applicable to this insurance. If the earned premium thus computed exceeds the estimated advance premium paid for this insurance, the Named Insured shall pay the excess to the Company; if less, the Company shall return to the Named In-

sured the unearned portions paid by such Insured.

When used as a premium basis the word 'cost of hire' shall mean the amount incurred for (1) the hire of automobiles, including the entire remuneration of each employee of the Named Insured engaged in the operation of such automobiles subject to an average weekly maximum remuneration of $100, and for (2) pick-up, transportation or delivery service of property or passengers performed by motor carriers or property or services performed by motor carriers which are subject to the security requirements of any motor carrier law or ordinance. The rates for each $100 of 'cost of hire' shall be 5% of the applicable hired automobile rates, provided the owner of such hired automobile has purchased automobile Bodily Injury Liability and Property Damage Liability Insurance covering the interest of the Named Insured on a direct primary basis as respects such automobile and submits evidence of such insurance to the Named Insured.

The Named Insured shall maintain records of the information necessary for premium computation on the basis stated in the schedule, and shall send copies of such records to the Company at the end of the policy period and at such times during the policy period as the Company may direct

\* \* \* \* \* \*

"5. Other Insurance. This insurance shall be *excess* insurance over any other valid and collectible insurance for Bodily Injury Liability, for Property Damage Liability and for Automobile Medical Payments."

The per person/accident limits of U.S.F. & G's policy are $100,000.

## E. THE MERIT/EQUITABLE LEASING AGREEMENT

In November, 1965, MERIT leased a 1966 Cadillac automobile to EQUITA-

BLE for the period November 18, 1965 —November 17, 1967. The lease agreement, No. 1797, provided, in essence and pertinent part, that:

\* \* \* \* \* \*

"(a) LESSOR agrees, at its sole expense, to obtain and maintain through the term of this lease an acceptable public liability and property damage insurance policy for each leased automobile, protecting and naming the Lessee and Merit Rentals, Inc. as assured, in limits of not less than $100,000.00/$300,-000.00 for personal injury \* \* \* ".