ALLSTATE INSURANCE COMPANY,
an Illinois corporation, Plaintiff-
Appellee,

v.

The EMPLOYERS LIABILITY ASSUR-
ANCE CORP., Ltd., Defendant-Appel-
lant and United States Fidelity and
Guaranty Co., Defendant-Appellee.

No. 31068.

United States Court of Appeals,
Fifth Circuit.

June 30, 1971.

Rehearing Denied Aug. 3, 1971.

On Motion to Amend and to Reconsider
Aug. 25, 1971.

James E. Tribble, Paul R. Larkin, Jr., Carey, Dwyer, Austin, Cole & Selwood, Blackwell, Walker & Gray, Miami, Fla., Henry J. Whelchel, Miami, Fla., for appellants.

Adams, George & Wood, Edward A. Perse, David L. Willing, George E. Bunnell, Miami, Fla., for Allstate Ins. Co.

Before JOHN R. BROWN, Chief Judge, and COLEMAN and CLARK, Circuit Judges.

CLARK, Circuit Judge:

In one of those ordinary extraordinary bits of diversity mysticism, we must perform the occult multiple feats of divining whether the district court correctly predicted what a Florida court would determine an Illinois court would decide on a question which the courts of Illinois have not yet squarely faced. Allstate Insurance Company (Allstate) brought this declaratory judgment action seeking a legal interpretation of the frequently conflicting, often abstruse, but standard and widely used in insurance policy words "other collectible insurance" in hired automobile coverage clauses of poli-

cies issued by Allstate and United States Fidelity and Guaranty Company (USF & G), and in a condition clause of an umbrella or catastrophe policy issued by Employers' Liability Assurance Corp., Ltd. (Employers). The issue here has an unusual twist. Instead of determining which of two policies, each negating primary coverage, must supply initial protection to the insured, we are required to establish secondary liability priorities among three insurers, who have all declared their coverages of the occurrence involved to be secondary, after an admittedly primary insurer has exhausted its coverage limits without extinguishing the insured's obligations. The precise question is whether the excess insurance provisions of the hired automobile coverage clauses grant "other collectible insurance" within the meaning of a contingent excess condition clause in the umbrella or a catastrophe policy. The district court held they did not and that the umbrella insurer was required to shoulder the entire liability over and above the primary coverage.[1] We disagree.

The parties have stipulated that the law of the State of Illinois, where the named and other insureds resided and where the policies were issued, controls the disposition of this case. The facts have also been stipulated and can be simply stated. Merit Rentals, Inc. (Merit) leased an automobile to Equitable Millinery Company (Equitable), a partnership. The period of the lease was for two years and obligated Merit to obtain and maintain public liability insurance protecting and naming Equitable and Merit as assureds in limits of not less than 100,000/300,000 dollars for personal injury. Harold Hefter, one of the partners in Equitable, was the primary driver of this automobile during the lease term. At a time when this automobile was being operated by Hefter, an accident occurred in Dade County, Florida resulting in serious injuries to Neal Allen Roth. At the time of this accident a primary policy of comprehensive general liability insurance, naming Equitable as an insured and containing the minimum lease required limits of 100,000/300,000 dollars, had been issued by Lumbermen's Mutual Casualty Company (Lumbermen's) to Merit. At this time USF & G also insured Equitable against liability for risks connected with the operation of automobiles owned by the partnership, through a policy which contained the following clause applicable to hired automobiles:

> Other Insurance. This insurance shall be excess insurance over any other valid and collectible insurance for Bodily Injury Liability, for Property Damage Liability and for Automobile Medical Payments.

At the time of the accident Hefter was individually insured by Allstate against auomobile risks through a policy which contained this clause pertaining to leased automobiles:

> If there is other insurance ALLSTATE shall not be liable under this Part I for a greater proportion of any loss than the applicable limit of liability stated on the Supplement Page bears to the total applicable limit of liability of all collectible insurance against such loss; provided, however, the insurance with respect to a temporary substitute automobile or a non-owned automobile shall be excess insurance over any other collectible insurance.

The Employers policy which was effective when Roth was injured had been issued to Merit Chevrolet, Inc. covering a number of businesses—including that of a long term auto lessor, and it expressly covered subsidiary companies, including Merit Rentals. This policy was entitled "Umbrella Policy" and it extended nine different types of liability coverage. Among other things, it agreed to indemnify Merit for all amounts the insured should become obligated to pay by reason of personal injury and property damage liability within the policy definition of ultimate net loss. The words "ultimate

---

1. This decision is reported at 316 F.Supp. 1216 (S.D.Fla.1970).

net loss" were defined as "the total sum which the insured, or any company as his insurer or both, becomes legally obligated to pay" as a consequence of automobile accidents. The policy expressly required Merit to maintain in effect certain other policies of primary insurance, termed underlying insurance, in the various liability areas covered during the policy period, and contained the following clause as a condition:

> Other Insurance. If any other valid and collectible insurance exists protecting the insured against ultimate net loss covered by this policy (other than the policies of underlying insurance specified in Item 3 of the declarations and other than any policy with respect to which this policy is specified therein as underlying insurance), this policy shall be null and void with respect to such loss whether the insured is specifically named in such other policy of insurance or not; provided, however, if the amounts recoverable by the insured under such other insurance are not sufficient to completely protect the insured against such loss, this policy shall apply but only as excess insurance over such other valid and collectible insurance in an amount not to exceed the limit of the company's liability stated in this policy, and not as contributing insurance.

A lawsuit was filed against Merit, Equitable and Hefter to recover for Roth's injuries. Ultimately all interested parties, including the insurers named here, succeeded in settling this action for a total sum of 250,000 dollars. Lumbermen's, conceding to all concerned that it owed coverage on a primary basis to these defendants, paid its maximum limit for a single injury in a single occurrence of 100,000 dollars; 50,000 dollars each was paid by Allstate, USF & G and Employers, to complete the settlement. The contributions of the latter three insurers were made under an agreement between these carriers that their contributions were made without prejudice to their rights to commence and defend this present action to determine their correlative rights and responsibilities.

The court sua sponte has determined that the vitality of declaratory judgment jurisdiction presents a sufficiently important question to warrant comment. The issue centers upon whether a justiciable case or actual controversy within the meaning of 28 U.S.C.A. § 2201 (1959), survived the action of the insurers who are parties to the present action in paying their pro rata share of the judgment against their insureds.

 The declaratory judgment remedy is an all-purpose remedy designed to permit an adjudication whenever the court has jurisdiction, there is an actual case or controversy and an adjudication would serve a useful purpose. 6A Moore's Federal Practice ¶ 5705. The act is remedial and is to be liberally construed to achieve its wholesome and salutary purpose. Miss. Power & Light Co. v. City of Jackson, 116 F.2d 924 (CCA 5th 1941). In Golden v. Zwickler, 394 U.S. 103, 89 S.Ct. 956, 22 L.Ed.2d 113 (1969), the court stated:

> "[T]he federal courts established pursuant to Article III of the Constitution do not render advisory opinions. For adjudication of constitutional issues 'concrete legal issues, presented in actual cases, not abstractions' are requisite. This is as true of declaratory judgments as any other field." United Public Workers of America (C.I.O.) v. Mitchell, 330 U.S. 75, 89, 67 S.Ct. 556, 564, 91 L.Ed. 754 (1947). "The difference between an abstract question and a 'controversy' contemplated by the Declaratory Judgment Act is necessarily one of degree, and it would be difficult, if it would be possible, to fashion a precise test for determining in every case whether there is such a controversy. Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a

declaratory judgment." Maryland Casualty Co. v. Pacific Coal & Oil Co., 312 U.S. 270, 273, 61 S.Ct. 510, 512, 85 L.Ed. 826 (1941).

We have held that no action for declaratory relief will lie to establish an insurer's liability in a policy clause contest such as the one at bar until a judgment has been rendered against the insured since, until such judgment comes into being, the liabilities are contingent and may never materialize. American Fidelity & Casualty Co. v. Pennsylvania Threshermen & Farmers' Mutual Casualty Ins. Co., 280 F.2d 453 (5th Cir. 1960). There is no question here that such a judgment has been rendered establishing liability in the premises. But did its voluntary payment, although accompanied by a full reservation of rights by the payors as between themselves, nevertheless operate to extinguish the right of the parties to invoke federal declaratory jurisdiction? We think not. Although the companies did not pay their agreed pro rata portions of the judgment involuntarily in the sense that the judgment constituted any immediate threat to their property rights, and while their respective payments might preclude any recovery from the insured or from the injured party (a question we just don't reach), their unambiguous agreement with each other clearly evinces their intention to reserve and not to forego a later adversary determination of their respective rights and liabilities *inter sese*. To this extent, their payments in nowise operated to interdict or eliminate their claims against each other. A contrary ruling could have harmful effects entirely out of kilter with the equitable purposes underlying the remedy afforded, for it would—as we previously observed—require companies in such a dilemma to place their insureds "between the upper and nether milestones" of paying or staving off execution on such a judgment while the issue of coverage is fought out. *See* Maryland Casualty Co. v. Southern Farm Bureau Casualty Co., 235 F.2d 679 (5th Cir. 1956). We join in the district court's commendation of the procedure

followed in the instant case, which enabled the prompt settlement of the accident controversy, eliminated that controversy from the courts without interim expenditure of funds by an insured who was obviously entitled to reimbursement from some one or more of the companies involved, and brought the existing dispute which was present all the time to issue in the case at bar without the presence of extraneous parties. *See* Farmers Elevator Mutual Insurance Co. v. Carl J. Austad & Sons, Inc., 366 F.2d 555 (8th Cir. 1966).

The district court construed the above quoted Other Insurance condition clause in Employers policy to be what casualty insurance jargon would classify as an escape clause. Having made this construction and at the same time acknowledging that no Illinois cases had been cited with facts truly similar to those of the present case, the court concluded it had no choice but to apply what it described as a harsh rule of Illinois law which inescapably compelled it to hold that when an escape clause was juxtaposed to an excess clause in such circumstances the excess clause would be given effect and the escape clause would be invalidated. We agree that such an application of Illinois precedent would produce harsh results. Our research also indicates that the precise issue in the case at bar has never been presented to the courts of Illinois in the factual context in which it is raised here.

Allstate and USF & G, being parties with identical contractual interests, rely most strongly upon the case of New Amsterdam Casualty Co. v. Certain Underwriters at Lloyds, 34 Ill.2d 424, 216 N.E. 2d 665 (1966). In this case the Illinois Supreme Court, acknowledged the issue to be one of first impression with it, and stated that it chose to follow the majority rule applicable to conflicts such as the one then before it. It held that an ordinary policy of automobile liability insurance, issued to the individual who was the driver of a rented automobile involved in an accident, which contained a clause providing that as to rented automobiles the coverage afforded was excess

insurance, did not provide "other valid and collectible insurance" within the meaning of an insuring clause in another policy of ordinary automobile liability insurance issued to a commercial rental agency, which provided that if other valid and collectible insurance was in effect as to a rental customer then no insurance at all was provided by the rental agency's policy.[2] There was no proviso in the rental agency policy to protect the insured to the extent of the limits of the policy in the event such other insurance was insufficient to completely protect the insured against loss. Nor was there any exception as to primary insurance coverage, since the rental agency policy involved was itself basically designed to provide primary insurance.

The Illinois Supreme Court did cite one prior construction of Illinois law by the Seventh Circuit in Zurich General Accident and Liability Ins. Co., Ltd. v. Clamor, 124 F.2d 717 (7th Cir. 1941). In that case one Clamor, while driving an automobile belonging to an individual named Dottini, with the latter's permission, caused an accident. Again, only two insurance carriers were involved. Each claimed the other was the primary insurer. The Seventh Circuit rejected the test which had been used by the district court, of determining which company first assumed the risk, and based its decision upon a construction of the language employed in the two contracts under consideration. The car owner's policy employed language which denied all coverage where other valid and collectible insurance was present. This was classified by the court as general language. The proviso in the driver's policy stating that it extended excess coverage only in the case of a nonowned automobile driven by its named assured, was found to be at least more specific than the Dottini policy's blanket denial of coverage. Following the rule of construction that specific language would control general language, priority was accorded to the car owner's policy.

Employers rests its position upon construction of Illinois law in Indiana Lumbermens Mutual Ins. Co. v. Mitchell, 409 F.2d 392 (7th Cir. 1969), and Automobile Underwriters, Inc. v. Hardware Mutual Casualty Co., 120 Ill.App.2d 159, 256 N.E.2d 463 (Ill.App.Ct.3d Dist.1970). In these two cases the Seventh Circuit and the Illinois Appellate Court were confronted with determining which policy provided primary coverage in an accident involving the permitted use of an automobile belonging to a car dealer by a customer. In both cases only two carriers were involved. In the Seventh Circuit case the automobile involved was loaned by the dealer while the customer's regular auto was under repair, while the Illinois Appellate Court case arose while the individual involved in the collision was test driving an automobile with a view toward buying it. In each case the insurer of the automobile agency included a clause in its policy denying all protection to the agency's customer in situations where the customer was covered by "other valid and collectible insurance, *either primary or excess.*" In both cases the customer was the owner of a policy of insurance which provided that his policy was excess insurance in any situation where he was driving a nonowned vehicle with the permission of its owner. Chief Judge Castle, speaking for the Seventh Circuit, recognized that he was *Erie* bound by Illinois law. He distinguished the *New Amsterdam* case, *supra*, because he recognized an obligation under Illinois law to determine the effect

---

2. The exact wording of the clause in the policy issued to the individual who rented the car was as follows:

 OTHER INSURANCE * * * [T]he insurance with respect to * * other automobiles under Insuring Agreement V shall be excess insurance over any other valid and collectible insurance available to insured, either as an insured under a policy applicable with respect to said automobile or otherwise.

The pertinent parts of the clause in the policy issued to the rental agency stated:

 OTHER INSURANCE * * * If * * * [the renter] is also covered by other valid and collectible insurance, * * * [the renter] shall not be indemnified under this policy.

of the coverages from a reconciliation of the language of the contracts where that was possible. Emphasizing the language emphasized above—"either primary or excess", he determined that the policy issued to the automobile dealer intended to, and did specifically exclude coverage where other collectible excess insurance was present. The specific inclusion of the modifying word "excess" was sufficient to distinguish the *New Amsterdam* case. The court also noted that the auto dealer's policy recited that it was issued at a reduced premium rate because of reduced coverage and, therefore, the conclusion reached was not only dictated by the language of the contract but by the factual circumstances of the parties.

Proceeding on almost an identical basis of reasoning, the Illinois Appellate Court held the automobile dealer's policy secondary to the policy issued by the company insuring the customer, because the dealer's policy had expressly designated the type of insurance with which it might conflict.[3] Again the court emphasized that its decision was based upon an interpretation of the language used in the policy according to the sense and meaning of the terms as they evidenced the intent of the parties.

The very best insight we can get into how the Supreme Court of Illinois would rule on the precise question of insurance contract interpretation presented in the case *sub judice*, indicates to us that that court would abhor the arbitrary application of any rigid rule or fixed formula where the contracting language of the various parties could be rationally construed. We do not believe that the clause in the Employers policy would be labeled an "escape" clause so as to produce a summary, harsh resolution of liability priority, any more than would all three of the clauses involved be autocratically classified as mutually repugnant thereby requiring a proration. Rather, we

think the court would analyze the language of the policies in the light of the circumstances of each contracting party, to determine the intention of each contract within the design of a consistent overall insuring scheme. When this approach is taken a result different from that reached by the district court must obtain.

At the outset, we note that Lumbermens has already assumed and discharged the obligations falling upon a primary insurer as to this accident. The order of priorities to be established is solely among secondary carriers. Second, Employers policy is unique within the group of insurers here involved. It alone assumed only residual loss coverage in every event. The other insurers, Lumbermens, Allstate and USF & G, issued policies designed to provide a named insured with primary coverage, although, insofar as is pertinent to the covered occurrence here involved, they promised their insured only secondary or excess coverage. The Employers policy, on the other hand, in its basic insuring clause, provided indemnity solely in terms of *the insured's* share of "ultimate net loss". The policy defined that loss as including the total sum which the insured, *or any company as his insurer, or both,* became legally obligated to pay on account of an insured accident. Thus, Employers liability was created subordinate to every other type of insurance afforded to its insured. Third, Employers further expressly conditioned its residual obligation as one which was deferred to "other" valid and collectible insurance, "other than the policies of underlying insurance specified". Since all of the underlying policies, including the underlying policy of automobile liability insurance, were primary insurance policies, by necessary implication Employers pinpointed excess insurance as the "other" insurance first specified. We make this implication be-

---

3. Our prior decision in the Texas based case of Continental Casualty Co. v. Suttenfield, 236 F.2d 433 (5th Cir. 1956), reached the same result, based upon general insurance law reasoning and without purporting to follow a rule indigenous to Texas law. See also St. Paul Fire & Marine Ins. Co. v. Garza County Warehouse & Marketing Ass'n, 93 F.2d 590 (5th Cir. 1937).

cause primary and excess are the only two classifications of "other" insurance which could be reasonably anticipated. Although the clause appearing in the Employers policy does not expressly use the term "excess" as did the clauses involved in the *Indiana Lumbermens* and *Automobile Underwriters* cases, its necessary implication under a reasonable construction of the language used in the light of the circumstances of the parties and all other terms of the contracts involved, makes the rationale of those cases applicable. Fourth, it is incorrect to classify the clause in the Employers policy an "escape" or "no liability" clause. The clause does not permit the insurer to escape any part of its residual coverage obligation. Its wording makes it impossible for the insured to lose the benefit of the surplus or umbrella protection contracted for. Its proviso plainly declares that if the amounts recoverable from primary insurance and other secondary insurance sources are insufficient to completely protect the insured against loss, umbrella protection is afforded to the limits provided as excess insurance. If any label must be assigned to this condition clause, it ought to be assigned in light of its total context. Considering all of its terms, it's much more aptly described as a contingent excess clause than as an escape clause.[4] Finally, the insurance risk context differs from that which pertains as between the insurer of an episodic or short-term renter of automobiles and the primary insurer of the rental agency vis-a-vis the insurer of a two-year business rental vehicle lessee and the catastrophe or residual insurer of the leasing agency. When insuring claims simply cannot be resolved by word-logic, courts should determine whether coverage priorities can be allocated in the light of total policy insuring intent. Federal Insurance Company v. Prestemon, 278 Minn. 218, 153 N.W.2d 429 (1967). See also the concurring opinion of Judge Tate in State Farm Mutual Automobile Insurance Company v. The Travelers Insurance Company, 184 So.2d 750 (C.A.3 La.App.1966). Since a long-term lease vehicle such as was involved in the case at bar was virtually in the complete control of the lessees, Equitable and Hefter, the exposure is really identical to that of a car owned by them. The liability carrier of these lessees thus has a better opportunity to secure adequate risk experience data to determine and collect an adequate rate than does the carrier who writes the residual protection for the leasing agency. See Hawkes, Liability Guiding Principles Insurance Law Journal (CCH) August 1960 Number 451 at page 481.

█ In sum, we hold that once the primary insurance limits were exhausted, Allstate and USF & G, as excess insurers in identical factual circumstances and with legally indistinguishable provisions governing their respective liability priorities, were required to absorb the remaining loss on a pro rata basis to the limits of their policies before Employers became liable. Since this proration will not exceed the limits of either policy applicable to the subject occurrence, Employers has no liability in the premises. We reverse the judgment of the district court and remand the cause with directions to enter judgment against Allstate and USF & G in accordance with this opinion.

Reversed and remanded with directions.

### On Motion to Amend and to Reconsider

BY THE COURT:

It is ordered that the motions of Appellees to amend and to reconsider the petition for rehearing filed in the above cause are hereby granted. In the light of this amendment and motion, the Court has reconsidered its denials of the peti-

---

4. For general discussions on the question of "escape" versus "excess" clauses in two-policy contexts, see 8 Appleman, Insurance Law and Practice § 4914 (2d ed. 1962); 7 Am.Jur.2d Automobile Insurance § 202 (1963); Annot., 46 A.L.R.2d 1163 (1956).

tions for rehearing previously entered. The following language shall be added to the said denials.

After this Court has denied petitions for rehearing by both appellees herein, our attention was called to the decision of the Supreme Court of Illinois reversing the Third District Appellate Court decision in Automobile Underwriters, Inc. v. Hardware Mutual Casualty Co. and rejecting the reasoning of the Seventh Circuit decision in Indiana Lumbermens Mutual Insurance Co. v. Mitchell, which our decision points out were relied upon by appellant in this Court. As the antipenultimate and penultimate paragraphs of our opinion disclose, we did not give controlling effect to either of these decisions in reasoning that this cause should be reversed. Rather, we reasoned our conclusion on the five grounds enumerated therein. In view of the Illinois Supreme Court's action, we feel it bears repeating that the question before us is not concerned with the necessity for an arbitrary assignment of primary liability for insurance coverage to one of two insurers who have both expressly disclaimed such primary liability. Nor does the instant case deal with a conflict between excess and escape clauses as those labels were applied in the two cases cited above or in the prior Illinois Supreme Court cause of New Amsterdam Casualty Co. v. Certain Underwriters at Lloyds. After careful reconsideration of our decision, we do not believe that this most recent decision of the Illinois Supreme Court indicates that that State would refuse to follow the universal practice of placing a reasonable construction on clauses in separate insuring contracts wherever it is possible to resolve the liability and relative priorities of the insurers by such means. We, therefore, adhere to our reversal of this cause and to our prior denials of rehearing.