747 F.2d 684
 Jackie (Jack) EDWARDS and Brenda Edwards,
Plaintiffs-Counter-claim Defendants-Appellants,
v.
James T. SHARKEY, Defendant-Cross-Claimant,
Travelers Insurance, Defendant-Counter-claim Plaintiff,
Cross-Claimant Appellee, Cross-Appellee,
and
Reliance Insurance Company of New York,
Defendant-Cross-Claimant Appellee, Cross-Appellant.
 No. 83-8851
 
 Non-Argument Calendar.
 United States Court of Appeals,
Eleventh Circuit.
 Nov. 28, 1984.
 John D. Jones, Atlanta, Ga., for Reliance Ins. Co. of N.Y.
 Joe C. Freeman, Jr., Frank C. Bedinger, III, Atlanta, Ga., for Travelers Ins.
 Appeals from the United States District Court for the Northern District of Georgia.
 Before VANCE, HENDERSON and CLARK, Circuit Judges.
 PER CURIAM:
 
 
 1
 Reliance Insurance Company ("Reliance") cross-appeals from the grant of summary judgment by the United States District Court for the Northern District of Georgia in favor of Travelers Indemnity Company ("Travelers").
 
 
 2
 James T. Sharkey was involved in an automobile collision while driving a car rented from National Car Rental Systems, Inc. ("National"). This accident gave rise to four separate suits brought against Sharkey in district court.[1] National was insured by Travelers and Sharkey by Reliance.
 
 
 3
 While the four tort claims were pending the plaintiffs filed the present declaratory judgment action in district court against Sharkey, Travelers and Reliance seeking a determination of the relative liabilities of Travelers and Reliance for any judgment rendered against Sharkey in the tort actions. Travelers also filed a cross-claim against Reliance.[2] The dispute centers on the applicability of an excess insurance policy issued by Travelers to National. The district court granted Travelers' motion for summary judgment. The plaintiffs and Reliance appealed to this court.
 
 
 4
 After the appeal had been lodged, the four underlying tort actions were settled and this court granted the plaintiffs' motion to dismiss their appeal. Only Reliance's cross-appeal remains for consideration.
 
 
 5
 Before reaching the merits of this appeal, it is necessary to address two significant jurisdiction issues.[3] The first issue is whether the settlement of the underlying tort actions rendered the cross-appeal of Reliance moot. Reliance and Travelers agreed to fund the settlement without impairing the resolution of the coverage questions at issue in the declaratory judgment action.[4] This situation was faced squarely by the court in Allstate Insurance Co. v. Employers Liability Assurance Corp., 445 F.2d 1278 (5th Cir.1971),[5] which was a declaratory judgment action to determine liability priorities between Allstate and two other insurers. The three insurers asserted that their coverage of a claim for damages arising out of an automobile accident was secondary. All the interested parties, including the insurance companies, agreed to and paid a settlement of the underlying damage suit before the action for declaratory judgment was filed. The three insurers contributed to the settlement only after agreeing that their rights would not be prejudiced by the institution and defense of the suit for declaratory judgment.
 
 
 6
 The Court of Appeals for the Fifth Circuit held that the suit to determine the various liabilities of the insurers was not mooted by the agreement to and payment of the settlement. According to the court, far from making the declaratory judgment action moot, the agreement to settle removed the contingency factor by establishing the liability of the insured. Id. at 1281. Similarly, the payment of the settlement did not render the declaratory judgment action moot because such a ruling "could have harmful effects entirely out of kilter with the equitable purposes underlying the [declaratory action] for it would ... require companies to place their insureds 'between the upper and nether milestones' of paying or staving off execution on such a judgment while the issue of coverage is fought out." Id.
 
 
 7
 The second jurisdiction issue focuses on whether there was a "case or controversy" before the district court as required by 28 U.S.C. Sec. 2201. The Fifth Circuit Court of Appeals has cautioned against the exercise of jurisdiction in suits for declaratory judgment when the question of the apportionment of insurance coverage may never arise due to the lack of a judgment establishing the liability of the insured. See American Fidelity & Casualty Co. v. Pennsylvania Thresherman & Farmers' Mutual Casualty Co., 280 F.2d 453 (5th Cir.1960). This caution, however, is predicated on the traditional discretion of federal courts exercising jurisdiction over declaratory judgment actions. See id. at 461 ("The mandatory obligation of a District Court to accept and determine a suit for declaratory relief is not commensurate with the full scope of a 'case or controversy' within the constitutional sense."); MacMillen-Bloedel, Inc. v. Fireman's Insurance Co., 558 F.Supp. 596, 599 (S.D.Ala.1983) (interpreting American as rule governing discretion). But see Great Northern Paper Co. v. Babcock & Wilcox Co., 46 F.R.D. 67, 70 (N.D.Ga.1968) (American a constitutional rule). Moreover, the Supreme Court of the United States has held that a "case or controversy" exists to support declaratory relief between an injured third party and an insurance company even in the absence of a judgment in favor of the third party against the insured. Maryland Casualty Co. v. Pacific Coal & Oil Co., 312 U.S. 270, 61 S.Ct. 510, 85 L.Ed. 826 (1940). Finally, even if there was no "case or controversy" before the district court because of the lack of a judgment against the insured, the settlement of the tort actions provides the necessary establishment of the insured's liability. See Allstate Insurance Co. v. Employers Liability Assurance Co., 445 F.2d 1278, 1281 (5th Cir.1971).
 
 
 8
 Having determined that this court may properly exercise jurisdiction over this cross-appeal, we turn to the merits. The controversy is simply whether a policy issued by Travelers to National designated as No. TEX-105T849-1-80 (the "Excess Policy") applies to Sharkey. Reliance's coverage is conceded to be secondary to all policies issued by Travelers except for the excess policy.
 
 
 9
 The Excess Policy purports to increase coverage available under certain primary policies. The disagreement stems entirely from the following amendatory endorsement contained in the Excess Policy.
 
 
 10
 It is agreed that such insurance as is afforded under this policy applies only with respect to the comprehensive automobile liability insurance coverage part of the underlying policy designated in Item 5 of the declarations: provided, however, that this policy shall apply only with respect to the named insured designated in such underlying policy and to any partner or executive officer thereof qualifying as an insured under the provisions of the comprehensive automobile liability insurance coverage part of such underlying policy.
 
 
 11
 Record, vol. 2, p. 683.
 
 
 12
 There are four insurance policies identified in Item 5 of the declarations. Record, vol. 2, p. 681. One policy does not deal with automobile liability insurance and is, therefore, not at issue here. See Record, vol. 3, p. 788. Of the three remaining policies, Travelers concedes primary coverage liability to Sharkey only under the one designated No. T-CAP-166T800-A-79 (the "A-79" policy). Record, vol. 3, p. 958. The other two policies will be referred to as the "Texas" policy and the "Massachusetts" policy.[6]
 
 
 13
 Reliance first urges that the amendatory endorsement limits only one of the three relevant underlying policies designated in Item 5; the Excess Policy's additional coverage applies in full to the others. This contention is based on the fact that the phrases "the underlying policy" and "such underlying policy" in the endorsement are in the singular. In addition, Reliance points out that Travelers itself took this same position in its Response to Plaintiff's Motion for Summary Judgment in the district court. Record vol. 2, p. 396. Travelers has since repudiated this stand. Record, vol. 3, p. 789 n. 1.
 
 
 14
 Given that the endorsement restricts liability on only one of the underlying policies, Reliance claims that the Texas policy is the limited policy, and that, therefore, the additional coverage of the Excess Policy is available to Sharkey through the admittedly applicable A-79 primary policy. In the alternative, Reliance argues that all three underlying policies cover Sharkey. Accordingly, regardless of which policy is limited by the endorsement, the Excess Policy furnishes the additional protection through the other two.
 
 
 15
 It is well settled under Georgia law that when the language of an insurance contract fixing the extent of the insurer's liability is unambiguous, a court must expound the contract as made. Cantrell v. Home Security Life Insurance Co., 165 Ga.App. 670, 302 S.E.2d 415 (1983); Guarantee Trust Life Insurance Co. v. Davis, 149 Ga.App. 826, 256 S.E.2d 76, aff'd in part, rev'd in part, 244 Ga. 541, 261 S.E.2d 336 (1979).
 
 
 16
 Reliance's reading of the endorsement as limiting only one of the underlying policies is not in accord with the plain language of the contract. The endorsement states: "such insurance ... under this policy applies only ... to ... the underlying policy designated in Item 5 ...." As the district court correctly noted, these words do not restrict the pre-existing coverage of the Excess Policy as Reliance contends. Rather, the words completely redefine the coverage of the Excess Policy. Consequently, the use of the singular indicates, if anything, that the Excess Policy's additional coverage applies only to one of the underlying primary policies, to the exclusion of the others. At any rate, it is at least true that the plain language of the endorsement establishes that the additional coverage of the Excess Policy encompasses only those policies referred to by the phrase "the underlying policy designated in Item 5."
 
 
 17
 Consistent with the terms of the endorsement, coverage under policies referred to by this phrase may be enhanced "only with respect to the named insured designated in such underlying policy." The questions of which of the underlying policies cover Sharkey and which are included in the phrase "the underlying policy designated in Item 5," need not be decided because Sharkey is not the "named insured" in any of the policies designated in Item 5, and is not, therefore, entitled to any additional coverage under the Excess Policy.
 
 
 18
 Although Reliance does not argue the point, the plaintiffs, in the district court, contended that the use of the terms "insured" and "named insured" created an ambiguity. They reasoned that the term "named insured" could reasonably refer to the person named as the "insured." Because Sharkey arguably meets the definition of an "insured" in all of the underlying policies, therefore, the ambiguity whether he is also a "named insured" within the meaning of the endorsement should be resolved in favor of coverage.
 
 
 19
 In interpreting insurance contracts, however, courts construing Georgia law have consistently recognized the difference between the terms "insured" and "named insured," see, e.g., American Indemnity Co. v. Davis, 155 F.Supp. 47, 51 (M.D.Ga.1957), modified, 260 F.2d 440 (5th Cir.1958); Ericson v. Hill, 109 Ga.App. 759, 761, 137 S.E.2d 374, 376 (1964), as well as the special meaning of the term "named insured." See, e.g., Cotton States Mutual Insurance Co. v. Bowden, 136 Ga.App. 499, 221 S.E.2d 832 (1975) (definition of "named insured" not ambiguous); Griffin v. State Farm Mutual Automobile Insurance Co., 129 Ga.App. 179, 199 S.E.2d 101 (1973) (definition of "named insured" did not include defendant).
 
 
 20
 All three of the underlying policies designated in Item 5 specifically distinguish between the terms "insured" and "named insured." In defining the term "insured," the A-79 policy uses the term "you" to refer to a particular type of insured. Record, vol. 2, p. 472. The term "you" is then defined as "the person or organization shown as the named insured in Item One of the declarations." Record, vol. 2, p. 471. The declarations list National as the "named insured." Record, vol. 2, p. 464.
 
 
 21
 Similarly, the Massachusetts policy includes "named insured" as a particular type of "insured." Record, vol. 2, p. 745. The policy also lists only National as the "named insured." Record, vol. 2, p. 741.
 
 
 22
 The Texas policy contains a separate definition for "insured" and "named insured" and defines the latter as the "person or organization named in Item 1 of the declarations of this policy." Record vol. 1, p. 699. Item 1 of the declarations specifies only National as the "named insured." Record, vol. 1, p. 702.
 
 
 23
 Sharkey, therefore, is not a "named insured." As a result, the additional coverage provided by the Excess Policy cannot apply to him.
 
 The judgment of the district court is
 
 24
 AFFIRMED.
 
 
 
 [1]
 Jackie (Jack) Edwards v. James T. Sharkey, No. C82-2667A; Brenda Edwards v. James T. Sharkey, No. C82-2668A; Jackie (Jack) Edwards v. James T. Sharkey, No. C82-2669A; Brenda Edwards v. James T. Sharkey, No. C82-2670A
 
 
 [2]
 In addition, Travelers filed a counterclaim against the plaintiffs and a cross-claim against Sharkey. Sharkey then filed a cross-claim against both Travelers and Reliance
 
 
 [3]
 A third issue is suggested by the facts. There may be insufficient diversity between Travelers and Reliance to support independent federal subject matter jurisdiction over the cross-claim. Under the doctrine of ancillary jurisdiction, however, because there were substantial federal proceedings before the dismissal of the main claim, this court may retain jurisdiction. See Cenco, Inc. v. Seidman & Seidman, 686 F.2d 449 (7th Cir.) (dismissal of main claim after trial began did not require dismissal of ancillary cross-claim), cert. denied, 459 U.S. 880, 103 S.Ct. 177, 74 L.Ed.2d 145 (1982)
 
 
 [4]
 The only information in the record concerning the settlement is that contained in Reliance's supplemental brief on jurisdiction
 
 
 [5]
 In Bonner v. City of Prichard, 661 F.2d 1206 (11th Cir.1981) (en banc), theEleventh Circuit adopted as precedent the decisions of the Fifth Circuit rendered prior to October 1, 1981
 
 
 [6]
 The Texas policy is designated No. T-NSA-166T801-1-79. Record, vol. 2, p. 702. The Massachusetts policy is designated No. TR-FMC-148T970-3-80. Record, vol. 2, p. 741