**AETNA INSURANCE COMPANY,**
**Plaintiff,**

v.

**STATE AUTOMOBILE MUTUAL INSURANCE COMPANY, Defendant.**

**Civ. A. No. 7513–G.**

United States District Court,
W D. Kentucky,
Louisville Division.

Oct. 18, 1973.

---

Raymond O. Harmon, Boehl, Stopher, Graves & Deindoerfer, Louisville, Ky., for plaintiff.

John G. Crutchfield, Louisville, Ky., for defendant.

## MEMORANDUM OPINION AND ORDER

ALLEN, District Judge.

This action is pending before the Court on the motion of defendant, State Automobile Mutual Insurance Company, for summary judgment. The action is a diversity action and the amount in controversy is $40,000, plus interest.

In October, 1971, an accident occurred involving an automobile owned by Sheila Browning Walden and driven at the time of the accident by Ronald Lee Varvell. As a result of the accident, Judith Kennan and Christopher Browning, passengers in the automobile, suffered severe personal injuries and the driver was killed. It was stipulated that the accident would not have occurred except for the negligence of the driver.

At the time of the accident, the owner had a Personal Excess Liability Insurance Policy with plaintiff, Aetna Insurance Company, which designated her as the named insured. Under the terms of that policy, the driver was an additional insured.

At the time of the accident, the Royal Globe Insurance Companies had insured the owner with liability limits of $100,000 for injuries to each person and $300,000 for injuries arising out of each occurrence. Under the terms of the Royal Globe policy, the driver was an additional insured while driving the owner's automobile.

At the time of the accident, defendant provided liability coverage to the driver under two policies, each of which contained liability limits of $10,000 for each person insured, and $20,000 for each occurrence.

Claims for personal injuries were asserted by the two passengers against the estate of the driver and were settled on behalf of the estate of the driver by the plaintiff and the Royal Globe Insurance Companies. Pursuant to the settlement, Royal Globe paid $100,000 each to the two passengers under the liability coverage, and plaintiff paid a total of $215,000 under its policy to the two passengers.

Plaintiff, in its complaint, alleges that its coverage is excess to that afforded by defendant's policies and, therefore, it is entitled to recover $40,000 from the defendant, plus its attorney's fees. Defendant, although at first denying any liability, now takes the position that it is subject to a pro rata liability with the plaintiff, and, therefore, the plaintiff is entitled to recover the sum of $4,215.69.

It was stipulated by the parties that the automobile was negligently operated by the driver and that the settlement with the passengers was reasonable. It was also stipulated that the policy of the plaintiff was in the amount of $2,000,000, and that its policy contains an "other insurance" clause reading:

"OTHER INSURANCE. The insurance afforded by this policy shall be in excess of, and shall not contribute with, any other insurance (except insurance purchased to apply in excess of the sum of the retained limit and the limit of liability hereunder) available to the named insured and any other person or organization falling

within the definition of insured in this policy, not only under any policy enumerated in schedule A, but also under any other insurance available to the insured, and this insurance shall not apply until all such insurance is exhausted."

In addition to that language, plaintiff's policy contains the following provisions:

"I. Coverage—To indemnify the insured for ultimate net loss in excess of the retained limit which the insured shall become legally obligated to pay as damages because of personal injury or property damage.

\* \* \* \* \* \*

## DEFINITIONS

"(F) 'Retained Limit' means the greater of:

(1) the total limit of liability of all applicable underlying insurance described in schedule A hereof, plus the applicable limits of liability of any other underlying insurance collectible by the insured."

The defendant's policies contain "other insurance" clauses reading:

"OTHER INSURANCE. If the insured has other insurance against a loss covered by Part I of this policy for a greater proportion of such loss than the applicable limit of liability stated in the declarations bears to the total applicable limit of liability of all valid and collectible insurance against such loss; provided, however, the insurance with respect to a temporary substitute automobile or non-owned authombile shall be excess insurance over any other valid and collectible insurance."

In determining the questions presented by the motion, we must turn to controlling Kentucky law under the mandate of Erie Railroad Company v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Despite the contentions of the defendant in its brief that the case of Government Employees Insurance Company v. Globe Indemnity Company, 415 S.W.2d 581 (Ky.1967) is controlling, the Court is persuaded that this is not the case, and that there is no authority in Kentucky squarely on point. In Government Employees Insurance Company v. Globe Indemnity Company, supra, appellant was the driver's insurer and its policy covered him while driving automobiles not owned by him. Appellee was the owner's insurer and its policy covered other persons driving the insured's car with the owner's consent.

The driver's policy contained a clause which provided that in the case of a loss arising out of use by the insured of a nonowned automobile, the policy would be excess insurance over any other valid and collectible insurance. The owner's policy also contained an excess insurance clause, but contained, in addition, a clause which provided that the policy would not cover a person other than the named insured and his employees if "other valid and collectible insurance," either primary or excess, was available to such person. The trial court and the Kentucky Court of Appeals held that this second clause in the owner's policy, which it designated as an "escape clause", relieved the owner's insurer of liability.

In reaching its decision, the court discussed three basic kinds of situations which have arisen with regards to multiple automobile policies. In the first category, one policy contains an "excess insurance" clause and the other a standard "escape" clause. The Court of Appeals stated that in that instance the insurer whose policy contains the "escape" clause is liable and the other insurer is not, except as to an excess. The case of State Farm Mutual Automobile Insurance Company v. Hall, 292 Ky. 22, 165 S.W.2d 838, adopts this view.

In the second type of case, both policies contain an "excess insurance" clause and the Kentucky Court of Appeals states in that situation the majority of decisions have required proration. See 69 A.L.R.2d 1122.

In the third situation, where an owner's policy contains a "pro rata" clause and the driver's policy contains an "excess insurance" clause, the Court of Ap-

peals states that the weight of authority has been that the owner's policy is solely liable, except for an excess. The annotation at 76 A.L.R.2d 502 is cited.

The Kentucky Court of Appeals points out that a standard "escape" clause is one which simply negates any liability if "other valid and collectible insurance" is available to the driver.

The Court believes that the case of Allstate Insurance Company v. Employers Liability Assurance Corporation, 445 F.2d 1278 (5th Cir. 1971), reh. denied August 3, 1971, is a very well-reasoned case involving a factual situation very similar to the case at issue, and one which requires that defendant's motion for summary judgment be denied. In that case, instead of determining which of two policies, each negating primary coverage, must supply initial protection to the insured, the court was required to establish secondary liability priorities among three insurers, who all declared their coverages to be secondary, after the admittedly primary insurer exhausted his coverage limits without extinguishing the insured's obligations. While here we have only two secondary liability priorities to be established, the difference is one in number only and not in principle.

In Allstate Insurance Company v. Employers Liability Assurance Corporation, supra, Merit Rentals leased an automobile to Equitable Millinery Company. The lease obligated Merit to obtain and maintain public liability insurance naming Equitable and Merit as assureds in limits of not less than $100,000/300,000 for personal injury. Hefter, a partner in Equitable, was the primary driver of the automobile, and while it was operated by him, an accident occurred resulting in serious injuries to one Roth. At the time of the accident, a primary policy of comprehensive general insurance, in compliance with an agreement between Merit and Equitable as to the insurance coverage, had been issued by Lumbermen's Mutual Casualty Company to Merit.

At the time, Equitable had a policy with United States Fidelity and Guaranty Company which insured it against liability for risks connected with the operation of automobiles owned by the partnership, and which provided, as to hired automobiles, that it should be excess insurance over any other valid and collectible insurance.

At the time of the accident, Hefter was individually insured by Allstate through a policy, which pertained to leased automobiles, and provided that it should be excess insurance over any other collectible insurance.

A policy issued by Employers Liability Assurance Company, hereinafter referred to as Employers, had been issued to Merit. It was entitled "Umbrella Policy", and among other things, agreed to indemnify Merit for all amounts the insured should become obligated to pay within the policy definition of "ultimate net loss". "Ultimate net loss" was defined as the "total sum which the insured, or any company as his insurer, or both, becomes legally obligated to pay" as a consequence of automobile accidents. The policy expressly required Merit to maintain other policies of primary insurance termed "underlying insurance" and contained the following clause:

"Other Insurance. If any other valid and collectible insurance exists protecting the insured against ultimate net loss covered by this policy (other than the policies of underlying insurance specified in Item 3 of the declarations and other than any policy with respect to which this policy is specified therein as underlying insurance), this policy shall be null and void with respect to such loss whether the insured is specifically named in such other policy of insurance or not; provided, however, if the amounts recoverable by the insured under such other insurance are not sufficient to completely protect the insured against such loss, this policy shall apply but only as excess insurance over such other valid and collectible insurance in

an amount not to exceed the limit of the company's liability stated in this policy, and not as contributing insurance."

When Roth filed suit against Merit, Equitable and Hefter the action was settled for $250,000, with Lumbermen's paying $100,000 and $50,000 each being paid by Allstate, U. S. F. & G. and Employers, with the agreement that suit would be brought to determine the rights of Allstate, U. S. F. & G. and Employers.

On page 1283 of the *Allstate* opinion, the court noted that the Employers' policy was unique, since it only assumed residual loss coverage in every event. As was noted there, the other insurers issued policies designated to provide a named insured with primary coverage, although, insofar as the particular accident was involved, they promised their insured only secondary or excess insurance coverage. The court further noted that Employers' policy provided indemnity solely in terms of the insured's share of "ultimate net loss". That loss was defined as the total sum which the insured or any company as his insurer, or both, became legally obligated to pay on account of an insured accident. Thus, Employers' liability was subordinate to every other type of insurance afforded to its insured.

Finally, Employers expressly conditioned its residual obligation as one deferred to "other" valid and collectible insurance, "other than the policies of underlying insurance specified". The court observed that since all of the underlying policies "were primary insurance policies, by necessary implication Employers pinpointed excess insurance as the 'other' insurance first specified". The court held that the clause in the Employers' policy should not be designated as an "escape" or "no liability" clause, but a contingent excess clause.

While the language used by the plaintiff in its policy differs somewhat in its wording from that used in Employers in Allstate Insurance Company v. Employers Liability Assurance Corporation, supra, the intent of plaintiff to indemnify the insured for only those amounts which were not covered by other insurance is the same as was that of Employers. The language used in the coverage portion of plaintiff's policy, taken together with the definition of the words "retained limit", clearly indicate the plaintiff's intention not to escape liability, but to protect the insured against loss where the amounts recoverable from primary insurance and by other secondary coverages are insufficient to carry out this function.

The caption placed on the Aetna policy describes it as a "Personal Excess Liability Policy". This, of course, is not controlling. However, in its "other" insurance clause, plaintiff made it clear that its policy was not to contribute with any other insurance, except as to identical types of excess insurance, which is defined as insurance purchased to apply in excess of the sum of retained limit and the limit of liability hereunder.

Again, the plaintiff was reiterating the basic theme of its policy which is to give its insured protection over and above the protection afforded by all other insurance policies available to the insured. As stated by the Fifth Circuit in *Allstate,* this is not the type of case where an insurer is attempting to escape all liability, such as was involved in Government Employees Insurance Company v. Globe Indemnity Company, supra, but is a situation where plaintiff recognizes its liability to protect its insurer in the event that the insurer's coverage by other companies is not sufficient for that purpose.

Finally, the Court realizes that this opinion represents only an educated guess as to what the Court of Appeals of Kentucky might say in a similar situation, but an educated guess is mandated under the circumstances brought about by this diversity action.

The motion of the defendant for summary judgment is hereby overruled. It is so ordered.