**SAFECO INSURANCE COMPANY,**
**Appellant,**

v.

**INSURANCE COMPANY OF NORTH**
**AMERICA, Appellee.**

Supreme Court of Tennessee.

April 28, 1975.

Max D. Lucas, Jr., Kirkpatrick & Lucas, Memphis, for appellant.

Thomas F. Johnston, Armstrong, Allen, Braden, Goodman, McBride & Prewitt, Memphis, for appellee.

OPINION

HENRY, Justice.

In this action between two insurance companies, the question presented for determination is whether clauses appearing in the respective policies should be construed so as to require proration, or whether one provides basic and primary coverage and the other secondary or excess.

The Circuit Judge sustained a motion for judgment on the pleadings, holding that appellee's policy "is obviously an excess policy known in the trade as an 'umbrella' policy or a personal catastrophe in excess of one hundred thousand ($100,000.-00) dollars, of underlying insurance issued by the plaintiff, Safeco Insurance Company."

The record reflects that Safeco Insurance Company issued its policy of automobile liability insurance affording coverage to J. W. McDonald, and members of his family. His son, Paul McDonald, struck a minor pedestrian and, following suit in the United States District Court, at Memphis, judgments were awarded against him in the sum of two hundred and one thousand, three hundred and seventy-five ($201,375.00) dollars.

Safeco Insurance Company paid one hundred thousand ($100,000.00) dollars, the limit of its coverage.

The McDonalds were also covered by a Personal Catastrophe policy issued by the Insurance Company of North America, with stated limits of one million ($1,000,000.00) dollars.

The Insurance Company of North America paid the balance of the judgment in the sum of one hundred and one thousand three hundred seventy-five ($101,375.00) dollars.

Thereafter Safeco Insurance Company instituted this action insisting that there was a repugnancy between the provisions of the respective policies and, therefore, the coverage should be prorated on the basis of their respective limits of coverage with Safeco paying one eleventh ($\frac{1}{11}$) and INA paying ten elevenths ($\frac{10}{11}$) of the judgment.

The provision in question reads as follows:

## SAFECO

OTHER INSURANCE: If the insured has other insurance against a loss covered by the Liability Section of this policy SAFECO shall not be liable under this policy for a greater proportion of such loss than the applicable limit of liability stated in the declarations bears to the total applicable limit of liability of all valid and collectible insurance against such loss; provided, however, the insurance

hereunder with respect to a temporary substitute automobile or non-owned automobile shall be excess insurance over any other valid and collectible insurance. This is a standard "other insurance" clause.

## INSURANCE COMPANY OF NORTH AMERICA

This policy shows on its face that the coverage is *"in excess of the retained limit as stated herein."*

Sec. 4 of the General Conditions reads, in part:

*Retained Limit*—limit of liability. The company's liability shall be only for the Ultimate Net Loss in excess of the Insured's *retained* limit defined as the greater of:

(a) an amount equal to the limit(s) of liability *indicated beside underlying policy(ies) listed,* or insurance described in *Schedule A* hereof, plus the applicable limits of any other underlying insurance collectible by the insured; . . . (emphasis supplied)

In Schedule A, which is attached to and made a part of the policy, the insured warrants that he has *underlying insurance* (to the extent here applicable) as follows:

b. Automobile Liability—Bodily Injury Liability
$100,000 each person
$300,000 each occurrence

We think it is self-evident that there is no conflict, inconsistency or repugnancy between the appropriate provisions of these policies. It is obvious that Safeco's coverage is basic and primary and that INA provides personal catastrophe, "umbrella" or excess coverage.

The respective undertakings or obligations are entirely different.

Safeco's obligation is under the usual form of automobile liability coverage, and is the "underlying insurance." INA's coverage comes into play if, and only if, there

is underlying insurance. Without the basic coverage provided by Safeco, INA would would have no contractual liability.

It follows that the INA policy was not "other insurance" within the meaning of that term as it is defined in the Safeco policy.

It results that this is not a proper case for proration between insurance carriers.

In Wommack v. United States Fire Insurance Company, 323 F.Supp. 981 (W.D. Ark.1971), the catastrophe liability policy was substantially the same as the INA policy, to the extent above quoted. The Court held that the carrier had no liability until insured had incurred a net loss in excess of underlying policies.

The factual situation in Aetna Insurance Company v. State Automobile Mutual Ins. Co., 368 F.Supp. 1278 (W.D.Ky.1973) is not precisely the same; however, we think this case is relevant. *Aetna* issued a policy of Personal Excess Liability with coverage designed "to indemnify the insured for ultimate net loss in excess of the *retained limit* which the insured shall become legally obligated to pay as damages because of personal injury or property damage." The definition of *Retained Limit*, is almost verbatim with that contained in INA's policy in this suit. In holding that the umbrella policy was designed to indemnify the insured for only those amounts which were not covered by other insurance, the court said:

> The language used in the coverage portion of plaintiff's policy, taken together with the definition of the words "retained limit", clearly indicate the plaintiff's intention not to escape liability, but to protect the insured against loss where the amounts recoverable from primary insurance and by other secondary coverages are insufficient to carry out this function. Id. at 1282.

The whole theory of catastrophe or "umbrella" policies, as is indicated by their designation, is that the insured protects himself against catastrophic loss by the procurement of insurance coverage which takes up where his conventional policy leaves off.

We hold that the trial judge reached the correct conclusion and we affirm the judgment of dismissal; the costs are taxed against the appellant.

FONES, C. J., and COOPER, BROCK and HARBISON, JJ., concurring.