# UNITED STATES FIRE INSURANCE COMPANY *v.* MARYLAND CASUALTY COMPANY

[No. 1741, September Term, 1981.]

*Decided July 15, 1982.*

The cause was argued before LISS and WILNER, JJ., and

270

*Alva P. Weaver, III,* with whom were *Lord, Whip, Coughlan & Green, P.A.,* on the brief, for appellant.

*T. Rogers Harrison,* with whom were *Mudd & Harrison* on the brief, for appellee.

LISS, J., delivered the opinion of the Court.

United States Fire Insurance Company (hereinafter U.S. Fire), appellant, filed in the Superior Court of Baltimore City a petition for declaratory judgment against the Maryland Casualty Company (hereinafter Maryland Casualty), appellee. The dispute between the parties involved a determination of what order of priority should payment be made between a family automobile policy issued by Maryland Casualty and a catastrophe liability policy issued by U.S. Fire relating to personal injury damages arising out of a motor vehicle accident. An undisputed agreed statement of facts was filed by the parties. After hearing, the presiding judge filed a memorandum opinion and order declaring both insurers equally liable. U.S. Fire filed this appeal and Maryland Casualty cross-appealed the judgment.

The sole issue raised for determination by this appeal is whether the U.S. Fire catastrophe liability policy is excess to the Maryland Casualty family automobile policy. The facts in the case as agreed are as follows:

> Nathan Mash [Mash] was the owner of a 1974 Porsche automobile. Prior to June 10, 1977 Mash had loaned this automobile to Edward George Gutman [Gutman]. On June 10, 1977 Gutman was driving the Porsche automobile eastbound on Maryland Route 133 [Old Court Road] when he crossed the center lane of the street and was in collision with an automobile owned and operated by Alice Louise Platt [Platt] which was proceeding westbound on Maryland Route 133. Platt sustained

serious personal injury. Suit was instituted in the Circuit Court for Baltimore County by Platt [and her husband]. That suit was settled for the sum of Two Hundred Ninety Thousand Dollars ($290,000.00). Liberty Mutual Insurance Company [Liberty] had issued an Automobile Liability policy [No. AE 1 531 026 263-016] covering Mash and, as the undisputed primary insurer, paid $200,000.00, the total single bodily injury limit of its liability policy. Maryland Casualty Company [Maryland] had issued a Family Automobile Liability policy [No. TF 0004 96133] to Gutman as the named insured with a liability limit of $100,000.00 for bodily injury sustained by any one person. United States Fire Insurance Company [U.S. Fire] had issued a Commercial Comprehensive Catastrophe Liability policy [No. DCL 062933] to Mash as the named insured with a liability limit of $2,000,000.00 for bodily injury sustained by any one person, subject to a retained limit of $10,000.00.

Prior to the settlement of the Platt claim, U.S. Fire and Maryland Casualty entered into an Agreement dated February 29, 1980, wherein it was agreed that the parties would pursue settlement of the bodily injury claims arising out of the accident of June 10, 1977 and reserved their respective rights. U.S. Fire advanced the $90,000.00 necessary to consummate the Platt settlement.

This is a case of first impression in this jurisdiction. It involves the construction of a catastrophe liability insurance policy which, in essence, is umbrella coverage which becomes operative after, and only after, all primary insurance and/or excess insurance funds have been exhausted.

In the recent case of *Olympic Insurance Company v. Employers Surplus Lines Insurance Company,* 126 Cal. App.3d 593, 178 Cal. Rptr. 908 (1982), "primary" and "excess" coverages were defined as follows:

1. *Primary* coverage is insurance coverage whereby, *under the terms of the policy,* liability attaches *immediately* upon the happening of the occurrence that gives rise to liability. *(Oil Base, Inc. v. Transport Indem. Co.* (1956) 143 Cal.App.2d 453, 467, 299 P.2d 952). Primary insurers generally have the primary duty of defense.

2. *"Excess"* or *secondary* coverage is coverage whereby, *under the terms of the policy,* liability attaches only after a predetermined amount of primary coverage has been exhausted.[2] [Footnote omitted]. It is not uncommon to have several layers of secondary insurance. Secondary insurance is sometimes referred to as "umbrella" insurance. When secondary insurance is written to be excess to identified policies, it is said to be "specific excess." [126 Cal. App.3d at 597-598].

It is important that we consider the contents of the insurance contracts involved in this appeal. We again note that Liberty Mutual was the undisputed primary insurer and that it paid $200,000 representing the single bodily injury limit of its liability policy.

The pertinent applicable provisions of the Maryland Casualty policy are as follows:

*Coverage A — Bodily Injury/Liability* . . . To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of:

A. Bodily Injury . . . arising out of the ownership, maintenance or use of the automobile or any non-owned automobile . . .

*Persons Insured:*

The following are insureds under Part I:

(B) With respect to a non-owned automobile,

(1) The named insured . . .

*Other Insurance:*

If the insured has other insurance against the loss covered by Part I of this policy, the company shall not be liable under this policy for a greater proportion of such loss than the applicable limit of liability stated in the declaration bears to the total applicable limit of liability of all valid and collectible insurance against such loss; provided, however, the insurance with respect to a temporary substitute automobile or non-owned automobile shall be excess insurance over any other valid and collectible insurance.

The applicable provisions of the U.S. Fire policy are as follows:

I. COVERAGE — The Company agrees to indemnify the insured for ultimate net loss in excess of the retained limit hereinafter stated, which the insured may sustain by reason of the liability imposed upon the insured by law, or assumed by the insured under contract:

(a) Personal Injury Liability. For damages, including damages for care and loss of services, because of personal injury, including death at any time resulting therefrom, sustained by any person or persons:

III. DEFINITION OF "NAMED INSURED" AND INSURED — "Named insured", wherever used, includes any subsidiary company (including subsidiaries thereof) of the named insured and any other company coming under the named insured's control of which is assumed active management.

(d) Any person while using an automobile ... owned by ... the named insured ... and any person provided that the use of the automobile ... is by the named insured or with the named insured's permission.

## V. RETAINED LIMIT — LIMIT OF LIABILITY

— With respect to Coverage 1(a), 1(b), 1(c) or any combination thereof, the Company's liability shall be only for the ultimate net loss in excess of the insured's retained limit defined as the greater of:

(a) the total of the applicable limits of the underlying policies listed in Schedule A hereof, and the applicable limits of the other underlying insurance collectible by the insured;

In the event of the reduction or exhaustion of the aggregate limits of liability of the underlying policies listed in Schedule A by reason of losses paid thereunder, this policy, subject to the above limitations, (1) in the event of reduction, shall pay the excess of the reduced underlying limits; or (2) in the event of exhaustion, shall continue in force as underlying insurance.

"Conditions"

J. Other insurance. If other collectible insurance with any other insurer is available to the insured covering a loss also covered hereunder (except insurance purchased to apply in excess of the sum of the retained limit and the limit of liability hereunder) the insurance hereunder shall be in excess of and not contribute with, such other insurance. If the insured carries other insurance with the company covering a loss also covered by this policy (other than underlying insurance of which the insurance afforded by this policy is in excess) the insured must elect which policy shall apply and the company shall be liable under the policy so elected and shall not be liable under any other policy.

K. Underlying Insurance. If underlying insurance is exhausted by any occurrence, the company shall be obligated to assume charge of the settlement or defense of any claim or proceeding against the insured resulting from the same occurrence, but only where this policy applies immediately in excess of such underlying insur-

ance, without the intervention of excess insurance of other carrier.

The almost universal rule adopted by courts confronted with conflicting policy language is to analyze the language of the policies in the light of the circumstances of each contracting party to determine the intention of each contract within the design of a consistent overall insuring scheme. *See Allstate Insurance Company v. Employers Liability Assurance Corporation,* 445 F.2d 1278 (5th Cir. 1971).

In Maryland, when faced with conflicting policies, the Court of Appeals has attempted to resolve the problem of double coverage by reconciling the conflicting clauses. *See Consolidated Mutual Insurance Company v. Bankers Insurance Company of Pennsylvania,* 244 Md. 392, 223 A.2d 594 (1966); *Zurich Insurance Company v. Continental Casualty Company,* 239 Md. 421, 212 A.2d 96 (1964); *Citizens Casualty Company of New York v. Allied Mutual Insurance Company,* 217 Md. 494, 144 A.2d 73 (1958); *Celina Mutual Casualty Company of Ohio v. Citizens Casualty Company of New York,* 194 Md. 236, 71 A.2d 20 (1949).

In attempting to ascertain the contractual intent of the parties, the Court must not only consider the language employed by the parties, but also the character of the contract, its object and purpose as well as the facts and circumstances surrounding the parties at the time of the execution. *State Farm Fire & Casualty Company v. Quirt,* 28 Md. App. 603, 346 A.2d 497 (1975).

*Allstate Insurance Company v. Employers Liability Assurance Company, supra,* is the leading case on the subject of priorities among insurers where umbrella or catastrophe coverage is involved. In *Allstate,* the driver of the vehicle involved in the accident was insured individually by Allstate. Its policy provided that its coverage would be excess insurance over any other collectible insurance as to leased vehicles. The owner of the vehicle, a rental agency, was covered by both a policy of primary insurance issued by Lumbermens, as well as an umbrella policy issued by

Employers. In addition, there was a policy issued to the lessee of the vehicle, who was the employer of the driver, which provided "excess" coverage to an insured when a hired vehicle was involved. No dispute arose as to the obligation of the *primary* insurer for the payment of the first $100,000 of the settlement reached in the case. The controversy was the determination of the relative liabilities of the three "excess" insurers. The excess coverages provided under the Allstate and Lumbermens policies were excess only because the accident involved a non-owned or leased vehicle; otherwise, the policies were intended to provide basic primary coverage. Employers' policy required the insured to maintain certain other policies of primary insurance termed underlying insurance, and the other insurance clause of Employers' policy expressly provided that its coverage was excess to any other valid and collectible insurance.

The 5th Circuit Court of Appeals rejected Allstate's arguments that the various excess coverages were all on an equal footing requiring a pro rata sharing by the three insurers. The Court concluded that:

> . . . Employers policy is unique within the group of insurers here involved. It alone assumed only residual loss coverage in every event. The other insurers, Lumbermens, Allstate and USF & G, issued policies designed to provide a named insured with primary coverage, although, insofar as is pertinent to the covered occurrence here involved, they promised their insured only secondary or excess coverage. The Employers policy, on the other hand, in its basic insuring clause, provided indemnity solely in terms of the insured's share of "ultimate net loss". The policy defined that loss as including the total sum which the insured, or any company as his insurer, or both, became legally obligated to pay on account of an insured accident. Thus, Employers liability was created subordinate to every other type of insurance afforded to its insured. [445 F.2d at 1283].

After consideration of all of the terms of the insurance contracts here involved, the Court in the Allstate case decided that the coverage afforded under Employers' policy was a contingent excess clause and not an escape clause and the basic excess coverage of Lumbermens, Allstate and USF & G were first required to be exhausted before the umbrella carrier could be obligated to contribute to the loss. *Id.,* at 1284. That case has since been followed by those courts which had before them conflicts involving basic "excess" coverages and "umbrella" type coverages. *See Berkeley v. Fireman's Fund Insurance Company,* 407 F. Supp. 960 (W.D. Wash. 1975); *Aetna Insurance Company v. State Automobile Mutual Insurance Company,* 368 F. Supp. 1278 (W.D. Ky. 1973); *Prudential Property and Casualty Insurance Company v. New Hampshire Insurance Company,* 164 N.J. Super. 184, 395 A.2d 923 (1978); *Liberty Mutual Insurance Company v. United States Fire Insurance Company,* 590 S.W.2d 783 (Tex. 1979);[1] *Lumbermens Mutual Casualty Company v. Allstate Insurance Company,* 51 N.Y.2d 651, 417 N.E.2d 66 (1980); *Arizona Joint Underwriting Plan v. Glacier General Assurance Company,* 129 Ariz. 351, 631 P.2d 133 (1981).

In *Lumbermens Mutual Casualty Company v. Allstate Insurance Company, supra,* the Court of Appeals of New York, in a case of first impression in that State, was asked to resolve a conflict arising out of four insurance contracts providing coverage for the same loss. The vehicle involved in the accident was registered to a corporation, which was insured under a policy of primary insurance issued by Allstate, as well as a catastrophe policy issued by Lumbermens. In addition, the driver was covered under a policy issued by Allstate to his mother which afforded him excess coverage when driving a non-owned automobile. The driver was also insured under an executive policy issued to

---

1. Application for writ of error to the Court of Civil Appeals for the 14th Supreme Judicial District was filed by Liberty Mutual and, after consideration, the Supreme Court of Texas found no error requiring reversal of judgment of the Court of Civil Appeals and refused the application on the 6th day of February, 1980.

his father by Allstate, which by its terms afforded "umbrella" coverage equal to the "net loss in excess of insured's retained limit." Although it was argued that there was a basic conflict between the umbrella policies as well as the excess coverage provided under the mother's Allstate policy, the Court found a significant distinction in the language of the two umbrella policies and concluded there were four layers of coverage. The Court rejected Allstate's argument that all of the policies provided excess insurance on the same level and concluded that upon the exhaustion of the primary insurance, Allstate, the mother's insurer, would next be required to contribute. Upon exhaustion of the mother's policy limits, Allstate would be required to contribute up to the limits of the executive umbrella policy and then the catastrophe policy of Lumbermens would be summoned into effect.

The appellee, as well as the trial judge, relied primarily on *Ryder Truck Rental, Inc. v. Shapiro and Whitehouse,* 259 Md. 354, 269 A.2d 826 (1970), to support the trial court's conclusion in this case. We conclude that *Ryder* is distinguishable on the facts from the case here under consideration. In *Ryder,* the controversy involved two general liability policies which contained identical nonowner excess clauses. The unusual facts presented by *Ryder* were recognized by the Court of Appeals when it said they were "extraordinary in that they are apt never to recur in quite the same configuration." 259 Md. at 355. The Court held that the excess clauses were identical and therefore did not require the resolution of conflicting clauses; that each therefore was fully operative and as there was nothing to reconcile each would share equally in the loss.

The case which is most similar on the facts to the controversy here involved is *Liberty Mutual Insurance Company v. United States Fire Insurance Company, supra.* In that case a declaratory judgment was sought to determine the amount of the respective liabilities of two insurance companies for losses incurred as the result of an automobile accident. Each had an acknowledged obligation to partici-

pate in the final settlement, the issue being in what order and what proportion. The accident involved the settlement of a claim for personal injuries by a passenger in a jeep driven by one person and owned by another. Settlement was in the amount of $250,000. Kennedy was insured by American General Insurance Company which had issued a policy to him with limits of $100,000 per person per accident. Taub was insured by American General Insurance Company with a family automobile policy with primary limits of $100,000; and was also insured by U.S. Fire with a professional comprehensive personal catastrophy liability policy (an umbrella policy) with limits of $1,000,000 in excess of the insured's "retained limit."

Settlement was paid in the following order: American General paid its policy limits for a one person accident of $100,000; Liberty Mutual paid its policy limits of $100,000; U.S. Fire paid the remaining $50,000. Liberty Mutual and U.S. Fire, however, agreed to seek a judicial determination of coverage and order of coverage as between the two of them.

It is not necessary for us to recite the clauses of the policies of insurance issued by the contesting parties. Suffice it to say Liberty Mutual's policy is quite similar to Maryland Casualty's provisions in this case and U.S. Fire's umbrella clause is identical to that in the case here considered. Liberty Mutual on appeal contended that the "other insurance" clauses of the two policies were mutually repugnant. If this was correct, argued Liberty Mutual, then its policy should be construed to provide a concurrent second layer of insurance with appellee's policy in a pro rata amount based upon the respective maximum policy limits. The Texas Court rejected this argument where it stated:

> It is true that each of the policies has an "other insurance" clause that apparently limits coverage in the fortuitous circumstance of the presence of other validly subsisting coverage, but an examination of the purpose of the policies dictates the resolution of this dispute. Liberty Mutual's

policy generally affords primary coverage; its coverage becomes excess only because of the presence of a non-owned vehicle. United States Fire's policy remains excess in all events. Thus it is apparent that the intent of all parties to the policies is for United States Fire's policy to remain an umbrella policy, and Liberty Mutual's coverage to underlie it. *Allstate Ins. Co. v. Employers Liability Assur. Corp.,* 445 F.2d 1278 (5th Cir. 1971). Had Liberty Mutual issued its policy as it did, and United States Fire had issued its policy to Kennedy instead of to Taub, there would be no question that Liberty would be liable to the full extent of its policy limits. [590 S.W.2d at 785].

It seems clear to us that the overwhelming weight of authority is that where purported conflicts between a policy providing essentially primary coverage is made excess by the involvement of a non-owned vehicle and a policy providing umbrella or catastrophe policy are in conflict, the courts have held that the umbrella policy need contribute only after the primary and ordinary excess coverages as "other collectible insurance" in the meaning of the other insurance clause of the umbrella policy are exhausted.

We conclude that the appellee is obligated to reimburse U.S. Fire in the amount of $90,000 advanced by U.S. Fire pursuant to the agreement dated February 29, 1980.

> *Judgment reversed; case remanded for a declaration that appellee is required to reimburse U.S. Fire in the amount of $90,000.*
> *Costs to be paid by appellee.*