ALLSTATE INSURANCE COMPANY, as Successor Corporation to Northbrook Excess and Surplus Insurance Company, Plaintiff–Appellant,

v.

AMERICAN HARDWARE MUTUAL INSURANCE COMPANY, Defendant–Appellee.

No. 88–3043.

United States Court of Appeals, Fourth Circuit.

Argued Oct. 5, 1988.

Decided Jan. 12, 1989.

J. Greg Goodykoontz (Richard M. Yurko, Jr., Steptoe & Johnson, Clarksburg, W.Va., on brief), for plaintiff-appellant.

Kimberly Gail Mann (Lynch, Mann, Smith & Mann, Beckley, W.Va., on brief), for defendant-appellee.

Before RUSSELL, PHILLIPS, and CHAPMAN, Circuit Judges.

CHAPMAN, Circuit Judge:

Allstate Insurance Company ("Allstate") brought this action against American Hardware Mutual Insurance Company ("American Hardware") seeking a declaration that Allstate had no obligation to expend any sums, under an excess liability insurance policy issued by its predecessor, until American Hardware had exhausted its liability insurance policy limits. Jurisdiction was based upon diversity. On joint motions for summary judgment, the District Court for the Northern District of West Virginia found that both the Allstate and the American Hardware contained excess clauses which were mutually repugnant and must be disregarded. The court ordered the loss to be apportioned on a "policy limit method" and found this to be the most equitable method to employ. On appeal, Allstate seeks reversal of the district court's ruling, and urges us to declare the Allstate policy to be an umbrella policy which does not require payment under its liability coverage until all other policies are exhausted. We find Allstate's authorities persuasive.

## I.

On March 25, 1981, a vehicle driven by David Ross Talbott with Michael D. Fullen as an infant passenger, was involved in a single vehicle multiple rollover accident in Greenbrier County, West Virginia. Fullen was seriously injured in the accident. The automobile was owned by Chrysler Corporation and leased to Greenbrier Motor Company, Inc. through Chrysler's Dealer-Rent–A–Car Program. On March 28, 1983, Fullen and his parents filed suit seeking $2,200,000.00 from Chrysler Corporation, Greenbrier Motor Company, Inc., David Ross Talbott and William J. Talbott.

At the time of the accident, there were three insurance policies providing coverage. It is undisputed that Continental Insurance Company ("Continental") issued the policy which provided primary coverage. This policy insured Chrysler and Greenbrier Motor Company up to the policy limit of $500,000.00. All agree that the Continental limit must be exhausted before the other policies come into the picture.

There are two other policies providing coverage to the parties. The Allstate policy insures Chrysler for $10,000,000.00. This policy is a true umbrella policy in that it serves solely as excess insurance for all other underlying policies held by Chrysler. The Allstate policy did not provide primary coverage. The policy specifically states that:

> [I]f other valid and collectible insurance is available to any interest such interest shall not become an insured with respect to this coverage until all other applicable coverage available to them has been exhausted and then [Allstate] shall be liable for the ultimate net loss in excess of such insurance and up to but not exceeding the limit of liability of the aforesaid.

The American Hardware policy insures Greenbrier Motor for $500,000.00. This policy provides primary coverage for garage operations, including the use of automobiles. However, in one set of circumstances the policy states it will provide only excess coverage:

> For any covered auto you don't own, the insurance provided by this policy is excess over any other collectible insurance.... When two or more policies cover on the same basis, either excess or primary, we will pay only our share. Our share is the proportion that the limit of our policy bears to the total of the limits of all the policies covering on the same basis.

Consequently, the American Hardware policy will not afford primary coverage if a non-owned vehicle is involved.

## II.

The issue presented is the interplay and effect of the excess clauses contained in the two policies. Since it is undisputed that Continental's policy provides primary coverage, the order of priorities to be established is solely among secondary insurers.

West Virginia has not decided this issue, and it is our duty to determine how their courts would rule. Our court has no prior opinion clearly on point, but other circuits have faced the issue. The Fifth Circuit opinion of *Allstate Insurance Co. v. Employers Liability Assurance Corp., Ltd.,* 445 F.2d 1278 (5th Cir.1971), does provide a clear rule as to the priorities when an umbrella policy is present. In *Allstate,* an automobile leased by Equitable and driven with permission by one Hefter was involved in an accident. There was no dispute that there was a primary insurer but the priorities between the three excess policies were contested. Two of the policies, insuring Hefter and Equitable, were primary in nature but became excess when a leased automobile was involved. The third policy of Employers, insuring the lessor, was an umbrella and was to be excess in all situations if other insurance was provided.

The court analyzed the language of the policies in light of the parties' intent within the design of the overall insuring scheme and found the Employers policy assumed secondary liability in every event while the other two policies provided primary coverage at most times. Therefore, Employers had conditioned its liability on the exhaustion of all named underlying insurance and any other excess policies. Additionally, the court ruled that in a long-term lease, the lessee's liability carrier is in a better position to evaluate and insure against risks than the lessor's residual carrier. Consequently, the Fifth Circuit adopted the rule that primary policies with excess clauses must be exhausted before the carrier of an umbrella policy will be required to pay.

The *Allstate* rule has been adopted in many other jurisdictions, both federal and state. *See e.g. Occidental Fire & Cas. Co. of N.C. v. Brocious,* 772 F.2d 47 (3rd Cir. 1985); *Consol. Edison Co. of N.Y., Inc. v. Aetna Ins. Co.,* 601 F.Supp. 1024 (E.D.N.Y. 1985); *Berkeley v. Fireman's Fund Ins. Co.,* 407 F.Supp. 960 (W.D.Wash.1975); *Aetna Insurance Co. v. State Automobile Ins. Co.,* 368 F.Supp. 1278 (W.D.Ky.1973); *United Services Automobile Association v. Empire Fire & Marine Insurance Co.,* 134 Ariz. 64, 653 P.2d 712 (1982); *Aetna Casualty and Surety Co. v. Beane,* 385 So.2d 1087 (Fla.Dist.Ct.App.1980); *Blanchard v. Rodrique,* 340 So.2d 1001 (La.Ct. App.1976); *United States Fire Insurance Co. v. Maryland Casualty Co.,* 52 Md.App. 269, 447 A.2d 896 (1982); *Prudential Property and Casualty Insurance Co. v. New Hampshire Insurance Company,* 164 N.J. Super. 184, 395 A.2d 923 (1978); *State Farm Fire & Casualty Co. v. LiMauro,* 65 N.Y.2d 369, 482 N.E.2d 13, 492 N.Y.S.2d 534 (1985); *Liberty Mutual Insurance Company v. United States Fire Insurance Company,* 590 S.W.2d 783 (Tex.1979). It seems clear to us that the weight of authority holds that where purported conflicts exist between an umbrella policy and an essentially primary policy made excess by a non-ownership clause, the courts have held that the umbrella policy need not contribute until after the primary and ordinary excess coverages are exhausted.

In the instant action, the Allstate policy is purely excess in nature. It is a classic umbrella policy and can therefore never provide primary coverage. Rather, it encompasses all the potential liabilities which Chrysler might incur and provides an additional source of funds for liabilities in excess of the underlying policies' coverage. The issuance of the umbrella policy in the present case was conditioned upon the existence of 13 different underlying policies protecting Chrysler from liability in almost any imaginable circumstance.

In contrast, the American Hardware policy is essentially a policy of primary coverage. It is a "garage operations" policy and provides Greenbrier with primary coverage for all liabilities arising from its operations.

However, in the event that liability should result from the use of a non-owned automobile, the American Hardware policy states that it will provide only excess coverage. Consequently, in the instant case American Hardware purports to be a secondary carrier even though it has issued essentially a primary policy to Greenbrier. These are the same facts faced by the Fifth Circuit in *Allstate,* and we find that decision's logic persuasive. Since American Hardware is in most instances a primary policy, its limits should be exhausted before Allstate is required to contribute. The majority rule is clearly expressed in *United States Fire Insurance Co. v. Maryland Casualty Co.,* 52 Md.App. 269, 447 A.2d 896, 902 (1982).

It seems clear to us that the overwhelming weight of authority is that where purported conflicts between a policy providing essentially primary coverage is made excess by the involvement of a non-owned vehicle and a policy providing umbrella or catastrophe policy are in conflict, the courts have held that the umbrella policy need contribute only after the primary and ordinary excess coverages as "other collectible insurance" in the meaning of the other insurance clause of the umbrella policy are exhausted.

We believe the West Virginia courts would follow the "overwhelming weight of authority" in deciding this issue, so we reverse the district court and hold that the limits of the coverage provided by the American Hardware garageman's policy must be exhausted before the Allstate umbrella policy may be called upon to provide any payment.

Although our finding on coverage makes it unnecessary to decide the question of apportionment, it appears to us that the district court was in error in not following *Reliance Insurance Co. v. St. Paul Surplus Lines Insurance Co.,* 753 F.2d 1288 (4th Cir.1985).

REVERSED.