NIEMEYER, Circuit Judge,
dissenting:
I
During the 2002-2003 school year, a high school teacher in West Virginia’s Lincoln County School District sexually abused a student, and the student’s parents sued the teacher, the school board, and several school system employees, including the school’s principal.
National Union Fire Insurance Company (“National Union”), the school board’s primary insurance carrier, paid the limits of its $1 million policy to settle the parents’ claim, and General Star National Insurance Company (“General Star”), the school board’s excess carrier, contributed a portion of its $5 million excess coverage to the settlement. This action addresses whether General Star has a right to obtain reimbursement from Horace Mann Insurance Company (“Horace Mann”), which had underwritten an insurance policy covering members of the West Virginia Education Association personally, including the school principal in this case.
The district court, considering the language of both the General Star policy and the Horace Mann policy, concluded that the “other insurance” provisions of the two policies were reconcilable and accordingly applied them so that the Horace Mann policy was excess over the General Star policy. The court noted that the language of the Horace Mann policy specifically defined its coverage to be excess over the General Star policy and that the General Star policy explicitly accommodated this order of coverage, providing that it was not an excess policy over another policy that provided it was an excess policy over the General Star policy.
I agree with the district court’s common sense reading of the plain language of the two policies and its conclusions that they are not in conflict. Therefore, I conclude that no extra-contractual insurance principles developed to resolve conflicts among policies need to be applied to determine the order of their coverage.
II
Rather than applying the language of the policies, the majority attempts to assign the policies at issue to generalized classifications and then to apply general rules of court-made law to resolve conflicts among policy classifications. To this end, the majority devotes pages to defining the classifications to which it might assign the policies and how each classification might change with the inclusion of a different type of “other-insurance” clause. The generalized classifications identified by the majority include: “a primary policy,” “an excess policy,” “policies with ‘other insurance clauses’ taking the form of a pro-rata clause, an escape clause, or an excess clause,” “a primary liability insurance policy that contains an excess other-insurance clause,” “a coincidental excess policy,” “a true excess or pure excess policy,” and an “umbrella policy.” And then, after spending pages defining these general classifications, the majority attempts to fit the policies in this case within one classification or another. It concludes that the Horace Mann policy is a “coincidental excess poli *341 cy” and that the General Star policy is a “true excess policy.” It then assumes that these classifications conflict and, without considering whether the policies do in fact conflict, predicts that West Virginia would resolve the conflict in favor of General Star, even as it acknowledges that no West Virginia case has so held. As to whether it should consider the policy language, the majority states:
Accordingly, in a priority dispute between a true excess insurer and a primary or coincidental excess insurer, the policies’ other-insurance clauses simply are not relevant, and there is no reason to consider whether the other-insurance clauses may be reconciled or must be set aside as mutually repugnant.
(Emphasis added). To predict what West Virginia might do, the majority relies on our holding in Allstate Insurance Co. v. American Hardware Mutual Insurance Co., 865 F.2d 592 (4th. Cir.1989), which held that when two policies conflict, the true excess insurance is always excess over a policy providing primary coverage, regardless of the language of the policies.
The jurisprudence of the majority’s de-cisionmaking is a remarkable creation for this case, especially in view of its acknowledgment, when describing the generally applicable principles of law, that “where the other-insurance clauses can be reconciled, the clauses will be enforced in accordance with their terms.” Rather than attempting to apply this principle and reconcile the clauses, however, the majority concludes from its classification system that the policies cannot be reconciled. Accordingly, it applies the inappropriate proposition that when in conflict, an excess policy is always secondary to a primary policy. Using this methodology, it reaches the conclusion that General Star wins and so reverses the district court’s judgment.
Had the majority taken the relevant insurance policies as contracts and applied them as written, it would undoubtedly have reached the same conclusion that the district court reached.
Ill
The policies in this case were issued against the statutory backdrop of the West Virginia Code, which requires specified insurance for school systems and public school employees. In West Virginia, all county boards of education are required by law to have at least $1 million of primary liability insurance coverage and $5 million of excess coverage. See W. Va.Code § 29-12-5a. In particular, the statute requires that the West Virginia Board of Risk and Insurance Management purchase such insurance on behalf of all boards of education and their employees, and it requires that the county school boards pay the premiums for the excess policy. Id. § 29-12-5a(c). Moreover, each insurance company providing insurance under this mandate must be licensed to do business in West Virginia. Id. For the Lincoln County Board of Education’s 2002-2003 school year, the statutorily required insurance package consisted of a primary policy issued by National Union, covering losses up to $1 million, and an excess policy issued by General Star, covering losses greater than $1 million, up to an additional $5 million. For persons in the education and insurance fields in West Virginia, these requirements were well known and well understood.
Recognizing this system of mandated insurance, the West Virginia Education Association obtained a supplemental policy from Horace Mann, which provided personal coverage for the members of the Association, including the school principal in this case. The Horace Mann policy explicitly stated that it was a low-cost poli *342 cy providing personal protection to members over and above the state-mandated insurance for public school employees.
In this case, after National Union paid its policy limits to settle with the parents of the abused student and General Star paid the remainder of the settlement amount, General Star sought to obtain reimbursement for the amounts it paid from Horace Mann. Horace Mann denied that it had a duty to reimburse General Star because its policy was excess over General Star’s policy, and it commenced this action seeking a declaratory judgment that its coverage was excess over General Star’s policy and that General Star’s policy limits had to be exhausted before Horace Mann would become obligated to contribute any amount. In response, General Star counterclaimed for a declaratory judgment favoring its position, and it also sought a money judgment compensating it for the portion of the underlying settlement it paid to the parents.
On cross-motions for summary judgment, the district court granted Horace Mann’s motion, declaring that the coverage provided by the Horace Mann policy was unambiguously excess over the coverage provided by the General Star policy and that the coverage limits of the General Star policy had to be exhausted before Horace Mann became obligated to contribute. Because General Star’s coverage limits were not exhausted in this case, the court did not order any contribution from Horace Mann.
I believe that the district court had it exactly right. The order of coverage provided by these policies is dictated by the unambiguous “other insurance” clauses contained within each policy, and in this case those clauses do not conflict; indeed, they accommodate each other. The “other insurance” clause of the Horace Mann policy begins:
This is a manuscript contract and is personal to the individual Insured named herein. It was written and priced to reflect the intent of all parties that this policy is in excess of any and all other insurance policies, insurance programs, self-insurance programs, and defense and indemnification arrangements whether primary, excess, umbrella or contingent and whether collectible or not, to which the Insured is entitled or should have been entitled, by contract or operation of law, to coverage or to payment including, but not limited to, payment of defense and/or indemnification.
(Emphasis added). The Horace Mann “other insurance” clause goes on to provide specifically that it was excess over the policies purchased by educational units in West Virginia to insure against liability arising from activities of the educational unit or its employees, regardless of whether that educational insurance provided primary or excess coverage. As the policy language specifies:
Further, it is the intent of the parties that the coverage afforded in this policy does not apply if the Insured has other valid and collectible insurance of any kind whatsoever whether primary or excess, or if the Insured is entitled to defense or indemnification from any other source whatsoever, including by way of example only, such sources as state statutory entitlements or provisions, except any excess beyond the amount which would have been payable under such other policy or policies or insurance program or defense or indemnification arrangement had this policy not been in effect. Other valid and collectible insurance includes, but is not limited to, policies or insurance programs of self-insurance purchased or established by or on behalf of an educational unit to *343 insure against liability arising from activities of the educational unit or its employees, regardless of whether or not the policy or program provides primary, excess, umbrella, or contingent coverage.
* * *
This policy is specifically excess over coverage provided by school district or school board ... general liability policies purchased by the Insured’s employer or former employer and it is specifically excess over coverage provided by any School Leaders Errors and Omissions Policy purchased by the Insured’s employer or former employer and it is specifically excess over coverage provided by any policy of insurance which purports to be excess to or recites that it is excess to a policy issued to the Insured for the benefit of members of the National Education Association.
(Emphasis added). It is apparent from this language and the statutory mandate for insurance that the West Virginia Education Association was purchasing a supplemental policy for its members to provide backstop coverage beyond that provided by National Union and General Star to the school board and its employees under state statutory requirements. This is the explicitly stated posture of the Horace Mann policy — to provide coverage in excess of the coverage provided by “an educational unit to insure against liability arising from activities of the educational unit or its employees.” Moreover, the policy explicitly refers to the state statutory provisions providing for the underlying insurance. Because the General Star policy is incontrovertibly the policy issued pursuant to West Virginia’s mandate to have $5 million of excess coverage for school boards and school employees, the Horace Mann policy thus provides it is excess over that policy.
In addition to policy language, the structure of insurance coverage for principals and teachers in West Virginia confirms Horace Mann’s posture as the ultimately excess policy. All public school principals and teachers in West Virginia are covered by the statutorily mandated insurance for the first $6 million of liability as provided by National Union for primary coverage and General Star for excess. By indicating that it is excess over insurance provided through “such sources as state statutory entitlements or provisions” and “purchased or established by or on behalf of an educational unit,” the Horace Mann policy clearly was referencing that it was excess over the $6 million of insurance required by West Virginia law and provided by National Union and General Star.
The language of General Star’s policy does not conflict with Horace Mann’s order of coverage. To the contrary, it explicitly accommodates Horace Mann’s policy as a policy excess over its own in its “other insurance clause.” The General Star “other insurance” clause provides:
If other valid and collectible insurance with any other insurer is available to the Insured covering a loss also covered by this Policy, other than insurance that is in excess of the Insurance afforded by this Policy, the insurance afforded by this Policy shall be in excess of and shall not contribute with such other insurance.
(Emphasis added). In the “other than” clause, the General Star policy explicitly recognizes that other insurance can in fact be excess over it when the other insurance provides that it is excess over the General Star policy. As I already noted, Horace Mann explicitly made its coverage excess over the General Star policy and therefore *344 General Star’s “other insurance” clause accommodates the order specified in the Horace Mann policy.
It is thus clear that the insurers involved understood the overall insurance scheme, with General Star and National Union providing the $6 million of coverage mandated by statute and with Horace Mann providing supplemental coverage over the statutorily mandated insurance. As the Horace Mann policy stated, it was offered to West Virginia Education Association members and priced “to reflect the intent of all parties” that it was intended only to be “in excess of any and all other insurance policies,” to provide members with protection against a potential loss of assets in the face of an astronomically high judgment exceeding the other statutorily mandated insurance.
Under West Virginia law, when we decide a case “concerning the language employed in an insurance policy,” we must “look to the precise words employed in the policy of coverage.” Horace Mann Ins. Co. v. Adkins, 215 W.Va. 297, 599 S.E.2d 720, 724 (2004). Moreover, we should give the language “its plain, ordinary meaning.” Id. (internal quotation marks and citation omitted). In this case the district court read the policies and concluded that
[T]he language of both Horace Mann’s and General Star’s other insurance provisions is unambiguous. Further, in applying the plain and ordinary meaning of the words used in those provisions, the Court concludes that, as written, the coverage provided by Horace Mann’s policy is unambiguously excess to the coverage provided by the policy issued by General Star.
I agree.
In addition to refusing to consider the policy language, the majority also misapplies our decision in Allstate Insurance Co. v. American Hardware Mutual Insurance Co., 865 F.2d 592 (4th Cir.1989). In Allstate we held that the rules generally governing conflicts between “other insurance” clauses do not apply when one of the policies at issue is a true excess policy and any other policy is a primary liability policy. Id. at 595. In the usual case, where two or -more “other insurance” clauses are in conflict, the clauses should be ignored and the policies applied pro rata. See Md. Cas. Co. v. Cont’l Cas. Co., 189 F.Supp. 764, 772-74 (N.D.W.Va.1960). Our decision in Allstate merely changed this rule in one specific set of circumstances where there are conflicting “other insurance” clauses and where one policy is a true excess policy and the other a primary policy. Instead of requiring proration, we required, in the automobile context, that the primary policy be exhausted before the excess policy is applied.
But the Allstate rule applies only to resolve conflicting “other insurance” clauses. When there is no conflict among such clauses, it remains the governing law in West Virginia that “[Ijanguage in an insurance policy should be given its plain, ordinary meaning.” Horace Mann, 599 S.E.2d at 724 (internal quotation marks omitted). Indeed, “[wjhere provisions in an insurance policy are plain and unambiguous and where such provisions are not contrary to a statute, regulation, or public policy, the provisions will be applied and not construed.” Id.
Because the reading of the General Star and Horace Mann policies at issue in this case reveals that they are not in conflict, we should move no further than declaring that their intent and effect are clear and, therefore, that application of the rules set forth in Allstate are inappropriate. I would accordingly affirm.